# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | NO. 2:14-CV-312 PS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ATLANTIC RICHFIELD COMPANY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CONSENT DECREE

This matter is before the Court on the Unopposed Motion of the United States for Entry of a Consent Decree [Doc. 4].  Having reviewed the motion and finding the Consent Decree to be fair and equitable, the government's unopposed motion is hereby **GRANTED.**

## TABLE OF CONTENTS

I.       BACKGROUND ................................................................................................. 1
II.      JURISDICTION .................................................................................................. 3
III.     PARTIES BOUND .............................................................................................. 3
IV.      DEFINITIONS..................................................................................................... 4
V.       GENERAL PROVISIONS ................................................................................ 10
VI.      PERFORMANCE OF SDs' Z1&3 T&D WORK BY SETTLING DEFENDANTS ......................................................................................................12
VII.     REPORTING REQUIREMENTS AND CONSULTATION OPPORTUNITIES14
VIII.    EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES... 16
IX.      PROJECT COORDINATORS ......................................................................... 17
X.       PERFORMANCE GUARANTEE .................................................................... 17
XI.      CERTIFICATIONS OF COMPLETION ......................................................... 21
XII.     EMERGENCY RESPONSE ............................................................................ 24
XIII.    PAYMENTS FOR Z1&3 FUTURE RESPONSE COSTS AND STATE'S Z1&3 FUTURE RESPONSE COSTS ...................................................................... 24
XIV.     INDEMNIFICATION AND INSURANCE ..................................................... 34
XV.      FORCE MAJEURE ......................................................................................... 36
XVI.     DISPUTE RESOLUTION ................................................................................ 37
XVII.    STIPULATED PENALTIES ............................................................................ 39
XVIII.   COVENANTS BY PLAINTIFFS ..................................................................... 42
XIX.     COVENANTS BY SETTLING DEFENDANTS .............................................. 45
XX.      EFFECT OF SETTLEMENT; CONTRIBUTION .............................................. 47
XXI.     ACCESS TO INFORMATION ......................................................................... 48
XXII.    RETENTION OF RECORDS .......................................................................... 49
XXIII.   NOTICES AND SUBMISSIONS ..................................................................... 50
XXIV.    RETENTION OF JURISDICTION ................................................................. 53
XXV.     APPENDICES .................................................................................................. 53
XXVI.    COMMUNITY INVOLVEMENT ..................................................................... 53
XXVII.   MODIFICATION .............................................................................................. 54
XXVIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .......................... 54
XXIX.    SIGNATORIES/SERVICE ............................................................................. 54
XXX.     FINAL JUDGMENT........................................................................................ 55

# I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Indiana (the "State"), on behalf of the Indiana Department of Environmental Management ("IDEM"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States and the State in their complaint seek, *inter alia*: (1) reimbursement of costs incurred and to be incurred by EPA, the U.S. Department of Justice ("DOJ"), and the State for response actions within certain zones—identified as Zone 1 and Zone 3—of Operable Unit 1 ("OU1") of the U.S. Smelter and Lead Refinery, Inc. Superfund Site ("Site") in East Chicago, Indiana, together with accrued interest; and (2) performance of certain response actions by the Atlantic Richfield Company ("ARC") and E. I. du Pont de Nemours and Company ("DuPont") (collectively "Settling Defendants") within Zone 1 and Zone 3 of OU1 of the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for Zone 1 and Zone 3 of OU1 of the Site and the State has participated in such negotiations and elected to be a party to this Consent Decree.  All of the response costs that the State incurred at the Site before the Effective Date of this Consent Decree were paid by EPA through the Superfund Management Assistance Fund.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Department of the Interior on June 26, 2014, of negotiations with Settling Defendants regarding the release of hazardous substances that may have resulted in injury to natural resources under federal trusteeship and encouraged the trustee to participate in the negotiations of this Consent Decree.

E.      This Consent Decree is not intended to modify or supersede any terms or agreements set out in the Grand Calumet River/Indiana Harbor Canal Consent Decree entered on February 1, 2005, in *United States, et al. v. Atlantic Richfield Company, Inc., et al.*, No. 2:04-CV-00348-RL-APR (N.D. Ind.).

F.      Settling Defendants do not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

G.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on April 8, 2009, 74 Fed. Reg. 16,126–34.

H.      In response to a release or a substantial threat of a release of hazardous substances at or from OU1 of the Site, EPA commenced, in June 2009, a Remedial Investigation and Feasibility Study ("RI/FS") of OU1 of the Site pursuant to 40 C.F.R. § 300.430.

I.      EPA completed a Remedial Investigation ("RI") Report and a Feasibility Study ("FS") Report of OU1 in June 2012.

J.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS for OU1 and of the proposed plan for remedial action for OU1 on July 12, 2012, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Director of the Superfund Division, EPA Region 5, based the selection of the response action for OU1.

K.      The decision by EPA on the remedial action to be implemented at OU1 of the Site is embodied in a final Record of Decision ("ROD"), executed on November 30, 2012, on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

L.      The Site consists of two Operable Units: OU1 and OU2, both defined below. The Parties agree that the remedy for OU2 will be addressed separately at a later time.

M.      OU1 consists of surface and subsurface soil within the geographic boundaries identified in the definition of OU1. OU1 does not include groundwater. The Parties agree that the remedy for groundwater associated with the Site will be addressed separately at a later time.

N.      EPA has determined that the remedial design and remedial action for OU1 should be conducted in at least two phases to expedite the response. The first phase will consist of remedial design and remedial action to address lead and arsenic contamination in Zone 1 and Zone 3 of OU1. Zone 1 and Zone 3 (sometimes collectively referred to as "Z1&3") are defined below. All remaining elements of the remedial design and remedial action for OU1 will be implemented in a later phase or phases at a later time.

O.      Under this Consent Decree, Settling Defendants will: (i) implement response actions consisting of the Transportation and Disposal Work in Z1&3, except for Transportation and Disposal Work at certain properties within Z1&3 defined below as "Z1&3 Excluded Non-Residential Properties" and "Z1&3 Excluded Residential Properties"; (ii) pay all Z1&3 Future Response Costs and all State Z1&3 Future Response Costs not inconsistent with the NCP; and (iii) pay EPA for projected response costs, plus a premium, at the Z1&3 Excluded Non-Residential Properties and Z1&3 Excluded Residential Properties unless Settling Defendants are entitled to, and do, opt out of payment for one or both of these in exchange for not securing a covenant not to sue and not receiving contribution protection on the Z1&3 Excluded Non-Residential Properties and/or the Z1&3 Excluded Residential Properties, as applicable.

2

P.      EPA will implement Z1&3 Remedial Design and all response actions in Z1&3 except for the Z1&3 Transportation and Disposal Work at all but the Z1&3 Excluded Properties.

Q.      Based on the information presently available to EPA and the State, EPA and the State believe that the Z1&3 Transportation and Disposal Work at all but the Z1&3 Excluded Properties ("SDs' Z1&3 T&D Work") will be properly and promptly conducted by Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

R.      Actions and/or costs related to remedy review and additional response actions, as described in Section 121 of CERCLA, 42 U.S.C. § 9621(c), for Z1&3 are not included in Settling Defendants' obligations under this Consent Decree. Settling Defendants' potential liability for such actions and/or costs is specifically reserved in Paragraph 74.m of this Decree.

S.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the SDs' Z1&3 T&D Work shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

T.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the SDs' Z1&3 T&D Work required by this Consent Decree and to each person representing Settling Defendants with respect to the Site or the SDs' Z1&3 T&D Work, and shall condition all contracts entered into hereunder upon performance of the SDs' Z1&3 T&D Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the SDs' Z1&3 T&D Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the SDs' Z1&3 T&D Work in accordance with the terms of this Consent Decree. With regard to the SDs' Z1&3 T&D Work undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

a.      "ARC" shall mean Atlantic Richfield Company.

b.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

c.      "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXV). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

d.      The term "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

e.      "Disposal," for purposes of this Consent Decree only, shall mean the lawful placement of Waste Material generated by response actions undertaken at Zone 1 or Zone 3 onto land which is permitted to receive the Waste Material.

f.      "DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

g.      "DuPont" shall mean the E. I. du Pont de Nemours and Company.

h.      "Effective Date" shall be the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

4

i.      "EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

j.      "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

k.      "IDEM" shall mean the Indiana Department of Environmental Management and any successor departments or agencies of the State.

l.      "Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site or any property located within the Site.

m.      "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

n.      "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

o.      "OU1" shall mean the surface and subsurface soil of the area located inside the red highlighted boundaries on Appendix A.  OU1 is generally bounded on the north by East Chicago Avenue; on the east by Parrish Avenue; and the south by East 151st Street/149th Place on the south; and on the west by the Indiana harbor Canal.

p.      "OU1 Remedial Action Work Plan" shall mean the document developed and issued by EPA, and any modifications thereto, regarding Remedial Action in OU1. The OU1 Remedial Action Work Plan shall include, but not be limited to, implementation of Z1&3 Remedial Action except for the SDs' Z1&3 T&D Work.  The OU1 Remedial Action Work Plan shall not include the SDs' Z1&3 T&D Work Plan.

q.      "OU1 Remedial Design Work Plan" shall mean the document developed and issued by EPA, and any modifications thereto, regarding implementation of Remedial Design in OU1.  The OU1 Remedial Design Work Plan shall include, but not be limited to, Z1&3 Remedial Design.

r.      "OU2" shall mean groundwater associated with the Site as well as the surface soil, subsurface soil, and sediments located inside the blue highlighted boundaries on Appendix A.  The area within the blue highlighted boundaries on Appendix A consists of approximately 79 acres, is commonly known as 5300 Kennedy Avenue, and is generally bounded on the north by the Indiana Harbor Belt Railroad; on the east by Kennedy Avenue; on the south and west by the Grand Calumet River; and on the northwest by the Indiana Harbor Canal.

5

s.      "Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

t.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral and shall also mean any Subparagraphs thereof, identified by lower case letters and, in some cases, also Arabic numbers in parenthesis.

u.      "Parties" shall mean the United States, the State of Indiana, and Settling Defendants.

v.      "Past Response Costs" shall mean all costs, including but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through August 31, 2013, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

w.      "Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action set forth in the ROD, the Z1&3 SOW attached to this Consent Decree as Appendix B, and any modified standards established pursuant to this Consent Decree.

x.      "Remaining, Outstanding Z1&3 Future Response Costs" shall have the meaning set forth in Paragraph 41.b.

y.      "Remedial Action" shall mean all activities performed to implement the ROD, including implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of Remedial Design and the activities required under Section XXII (Retention of Records).

z.      "Remedial Design" shall mean those activities to be undertaken to develop the final plans and specifications for Remedial Action.

aa.     "Remedial Design Property Diagrams" shall have the meaning set forth in Section III.D.1.d of the Z1&3 SOW.

bb.     "Plaintiffs" shall mean the United States and the State of Indiana.

cc.     "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

dd.     "Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to OU1 of the Site signed on November 30, 2012, by the Director of the Superfund Division, EPA Region 5, and all attachments thereto.  The ROD is attached as Appendix C.

ee.     "SDs' Z1&3 T&D Supervising Contractor" or "Settling Defendants' Z1&3 T&D Supervising Contractor" shall mean the principal contractor retained by Settling Defendants to supervise and direct the implementation of the SDs' Z1&3 T&D Work under this Consent Decree.

ff.     "SDs' Z1 T&D Work" or "Settling Defendants' Z1 T&D Work" shall mean the T&D Work required of Settling Defendants in Zone 1 under this Consent Decree. Because Settling Defendants are not required to perform T&D Work at the Z1&3 Excluded

6

Properties, the "SDs' Z1 T&D Work" does not include T&D Work associated with response actions at Z1&3 Excluded Properties that are located in Zone 1.

gg.     "SDs' Z3 T&D Work" or "Settling Defendants' Z3 T&D Work" shall mean the T&D Work required of Settling Defendants in Zone 3 under this Consent Decree. Because Settling Defendants are not required to perform T&D Work at the Z1&3 Excluded Properties, the "SDs' Z3 T&D Work" does not include T&D Work associated with response actions at Z1&3 Excluded Properties that are located in Zone 3.

hh.     "SDs' Z1&3 T&D Work" or "Settling Defendants' Z1&3 T&D Work" shall mean SDs' Z1 T&D Work and SDs' Z3 T&D Work; it does not include the T&D Work associated with response actions at the Z1&3 Excluded Properties.

ii.     "SDs' Z1&3 T&D Work Plan" or "Settling Defendants' Z1&3 T&D Work Plan" shall mean the document developed pursuant to Paragraph 10 and approved by EPA, and any modifications thereto.

jj.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

kk.     "Settling Defendants" shall mean Atlantic Richfield Company and E. I. du Pont de Nemours and Company.

ll.     "Site" shall mean the U.S. Smelter and Lead Refinery, Inc. Superfund Site, located in the City of East Chicago, Lake County, Indiana, and depicted generally on the map attached as Appendix A. The Site includes both OU1 and OU2.

mm.     "State Z1&3 Future Response Costs" shall mean all costs, on and after the Effective Date, including but not limited to direct and indirect costs, that the State incurs in reviewing or developing plans or reports or other documents or items for implementing response actions in Z1 and/or Z3, reviewing or developing plans, reports, or other deliverables submitted by Settling Defendants pursuant to this Consent Decree, overseeing implementation of the SDs' Z1&3 T&D Work, or otherwise implementing, overseeing, or enforcing this Consent Decree. These costs include, but are not limited to, payroll costs, contractor costs, travel costs, laboratory costs, Indiana Office of Attorney General costs, costs incurred pursuant to Section XII (Emergency Response) and Section XXVI (Community Involvement), and the costs of obtaining access and Institutional Controls (including but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation). Z1&3 Future Response Costs do not include any costs incurred pursuant to Section 121(c) of CERCLA, 42 U.S.C. § 9621(c) (sometimes referred to in paraphrase as "5-year remedy reviews"), relating to Z1&3, OU1, or the Site.

nn.     "Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

oo.     "Transportation," for purposes of this Consent Decree only, shall mean the lawful transfer or conveyance of Waste Material generated by response actions undertaken in Zone 1 or Zone 3 from the time such Waste Material is picked up within Z1 and/or Z3 to the time it is disposed of. "Transportation" includes all transfers or conveyances of such Waste

Material, including but not limited to, temporary transfers or conveyances to transfer stations and/or treatment facilities and/or storage facilities prior to final Disposal.

   pp.   "Transportation and Disposal" or "T&D" shall mean the collective activities of Transportation and Disposal.

   qq.   "T&D Work" shall mean all activities and obligations required to undertake, perform, and complete Transportation and Disposal.

   rr.   "United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

   ss.   "USS Lead Z1&3 Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, to be established for Zone 1 and Zone 3 of OU1 of the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3). This Special Account is associated with Site/Spill ID Number 05 3J.

   tt.   "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), or under Indiana Code 13-11-2-98; (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33), or under Indiana Code 13-11-2-42; (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27), or under Indiana Code 13-11-2-205; and (4) any "hazardous material" under Indiana Code 13-11-2-96; and (5) any "hazardous waste" under Indiana Code 13-11-2-99(c).

   uu.   "Z1" or "Zone 1" shall mean the surface and subsurface soil found in an area located inside the yellow highlighted boundaries on Appendix D and labeled as "Zone 1." Zone 1 is generally bordered: (1) on the north by the northern boundary of the Carrie Gosch Elementary School and a line extending eastward from that boundary to the eastern edge of a north/south utility right of way that runs parallel to McCook Avenue north of East 149th Place; (2) on the east by: (i) the eastern-most edge of a north/south utility right of way that runs parallel to McCook Avenue until East 149th Place, and (ii) McCook Avenue between East 149th Place and 151st Street; (3) on the south by East 151st Street; and (4) on the west by the Indiana Harbor Canal.

   vv.   "Z2" or "Zone 2" shall mean the surface and subsurface soil found in an area located inside the yellow highlighted boundaries on Appendix D and labeled as "Zone 2." Zone 2 is generally bordered: (1) on the north by Chicago Avenue; (2) on the east, by the eastern edge of the railroad right of way that runs principally north and south and is labeled on Appendix D as "Elgin Joliet and Eastern Rlwy"; (3) on the south by East 151st Street; and (4) on the west by: (i) the Indiana Harbor Canal between Chicago Avenue and the northern boundary of the Carrie Gosch Elementary School; (ii) the eastern-most edge of a north/south utility right of way that runs parallel to McCook Avenue until East 149th Place, and (iii) McCook Avenue between East 149th Place and 151st Street.

   ww.   "Z3" or "Zone 3" shall mean the surface and subsurface soil found in an area located inside the yellow highlighted boundaries on Appendix D and labeled as "Zone 3." Zone 3 is generally bordered: (1) on the north by Chicago Avenue; (2) on the east by Parrish Avenue; (3) on the south by the northern edge of the railroad right of way located generally to the south of East 149th Place and labeled on Appendix D as "Elgin Joliet and Eastern Rlwy"; and (4) on the west by the eastern edge of the railroad right of way that runs principally north and

south and is labeled on Appendix D as "Elgin Joliet and Eastern Rlwy." The triangular plot of land bounded by several railroad spurs in the southeastern portion of the area labeled Zone 3 on Appendix D is a part of Zone 3.

xx.    "Z1&3 Available Funds" shall mean the funds available in the USS Lead Z1&3 Special Account together with any other funds available to EPA to spend on the Z1 Work or the Z3 Work that originated from the USS Lead Z1&3 Special Account. Z1&3 Available Funds does not include any money within the EPA Hazardous Substance Superfund apart from the money within the USS Lead Z1&3 Special Account.

yy.    "Z1&3 Excluded Properties" shall mean the Z1&3 Excluded Non-Residential Properties and the Z1&3 Excluded Residential Properties.

zz.    "Z1&3 Excluded Non-Residential Properties" shall mean the final list of non-residential properties within Zones 1 and 3 identified by EPA pursuant to Paragraph 43.b of this Consent Decree.

aaa.    "Z1&3 Excluded Residential Properties" shall mean the final list of residential properties within Zones 1 and 3 identified by EPA pursuant to Paragraph 43.b of this Consent Decree.

bbb.    "Z1&3 Future Response Costs" shall mean all costs, including but not limited to direct and indirect costs, that the United States incurs in implementing response actions in Z1 and/or Z3, including but not limited to reviewing or developing its own plans or reports for implementing response actions in Z1 and/or Z3, reviewing or developing plans, reports, or other deliverables submitted by Settling Defendants pursuant to this Consent Decree, overseeing implementation of the SDs' Z1&3 T&D Work or otherwise implementing, overseeing, or enforcing this Consent Decree. These costs include, but are not limited to, payroll costs, contractor costs, travel costs, laboratory costs, Army Corps of Engineer Costs, Department of Justice costs, costs incurred pursuant to Section XII (Emergency Response), Paragraph 32 (Funding for Z1&3 Work Takeover), Paragraph 43 (Cashout of Z1&3 Excluded Properties or Opt-Out) and Section XXVI (Community Involvement), and the costs of obtaining access and Institutional Controls (including but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation). Z1&3 Future Response Costs also include all Z1&3 Interim Response Costs, but do not include Past Response Costs or any costs incurred pursuant to Section 121(c) of CERCLA, 42 U.S.C. § 9621(c) (sometimes referred to in paraphrase as "5-year remedy reviews"), relating to Z1&3, OU1, or the Site.

ccc.    "Z1&3 Interim Response Costs" shall mean all costs, including but not limited to direct and indirect costs: (1) paid by the United States in connection with Zone 1 and/or Zone 3 between September 1, 2013, and the Effective Date; or (2) incurred in Zone 1 and/or Zone 3 prior to the Effective Date but paid after that date.

ddd.    "Z1 Remedial Action" shall mean all activities performed in Zone 1 to implement the ROD, including implementation of Institutional Controls, until the Performance Standards are met in Zone 1, and excluding performance of the Zone 1 Remedial Design and the activities required under Section XXII (Retention of Records). Z1 Remedial Action includes response actions, including T&D Work, at the Z1&3 Excluded Properties located within Zone 1.

9

eee.    "Z3 Remedial Action" shall mean all activities performed in Zone 3 to implement the ROD, including implementation of Institutional Controls, until the Performance Standards are met in Zone 3, and excluding performance of the Zone 3 Remedial Design and the activities required under Section XXII (Retention of Records). Z3 Remedial Action includes response actions, including T&D Work, at the Z1&3 Excluded Properties located within Zone 3.

fff.    "Z1&3 Remedial Action" shall mean the Z1 Remedial Action and the Z3 Remedial Action. Z1&3 Remedial Action includes all response actions, including T&D Work, at the Z1&3 Excluded Properties.

ggg.    "Z1 Remedial Design" shall mean those activities to be undertaken by EPA to develop the final plans and specifications for Z1 Remedial Action.

hhh.    "Z3 Remedial Design" shall mean those activities to be undertaken by EPA to develop the final plans and specifications for Z3 Remedial Action.

iii.    "Z1&3 Remedial Design" shall mean the Z1 Remedial Design and the Z3 Remedial Design.

jjj.    "Z1&3 Statement of Work" or "Z1&3 SOW" shall mean the statement of work for implementation of response actions in Zones 1 and 3 as set forth in Appendix B to this Consent Decree, and any modifications made in accordance with this Consent Decree.

kkk.    "Z1&3 Temporary Container Accumulation Areas" shall mean locations within the boundaries of Z1 and/or Z3 used for the temporary placement of containers that will hold Waste Material prior to the Transportation of the Waste Material outside the boundaries of Z1 and/or Z3.

lll.    "Z1 Work" or "Zone 1 Work" shall mean the Z1 Remedial Design and Z1 Remedial Action. Settling Defendants will perform SDs' Z1 T&D Work and EPA will perform the remainder of the Z1 Work.

mmm.    "Z3 Work" or "Zone 3 Work" shall mean the Z3 Remedial Design and Z3 Remedial Action. Settling Defendants will perform the SDs' Z3 T&D Work and EPA will perform the remainder of the Z3 Work.

nnn.    "Z1&3 Work" or "Zones 1 and 3 Work" or "Zone 1 and Zone 3 Work" shall mean the Z1 Work, the Z3 Work, and all activities and obligations (in addition to SDs' Z1&3 T&D Work) that Settling Defendants are required to perform under this Consent Decree, except for the activities required under Section XXII (Retention of Records). Z1&3 Work does not include any activities or obligations done or incurred pursuant to Section 121(c) of CERCLA, 42 U.S.C. § 9621(c) (sometimes referred to in paraphrase as "5-year remedy reviews").

## V.    GENERAL PROVISIONS

5.    Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions in Zone 1 and Zone 3 of OU1 of the Site; to have Settling Defendants finance and perform SDs' Z1&3 T&D Work and pay the response costs of the United States and the State associated with Zone 1 and Zone 3 of OU1 of the Site; and to resolve

the claims of the United States and the State against Settling Defendants as provided in this Consent Decree.

     6.     <u>Commitments by Settling Defendants</u>.

     a.     Settling Defendants shall finance and perform the SDs' Z1&3 T&D Work in accordance with this Consent Decree, the ROD, the Z1&3 SOW, and the SDs' Z1&3 T&D Work Plan to be developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  Settling Defendants shall pay the United States for Z1&3 Future Response Costs and the State for State Z1&3 Future Response Costs as provided in this Consent Decree.

     b.     The obligations of Settling Defendants to finance and perform the SDs' Z1&3 T&D Work and to pay the Z1&3 Future Response Costs and the State Z1&3 Future Response Costs are joint and several.  In the event of the insolvency of either Settling Defendant or the failure by either Settling Defendant to comply with any requirement of this Consent Decree, the other Settling Defendant shall complete all such requirements.

     7.     <u>Compliance With Applicable Law</u>.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the Z1&3 SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

     8.     <u>Permits</u>.

     a.     As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the SDs' Z1&3 T&D Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the SDs' Z1&3 T&D Work).  Where any portion of the SDs' Z1&3 T&D Work that is not on-site requires a federal, state, or local permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

     b.     Settling Defendants may seek relief under the provisions of Section XV (Force Majeure) for any delay in the performance of the SDs' Z1&3 T&D Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Subparagraph 8.a and required for the SDs' Z1& 3 T&D Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

     c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal, state, or local statute, regulation, or ordinance.

11

## VI.   PERFORMANCE OF SDs' Z1&3 T&D WORK BY SETTLING DEFENDANTS

9.   Selection of SDs' Z1&3 T&D Supervising Contractor.

a.   All aspects of the SDs' Z1&3 T&D Work to be performed by Settling Defendants pursuant to Sections VI (Performance of SDs' Z1&3 T&D Work by Settling Defendants) and XII (Emergency Response) shall be under the direction and supervision of the SD's Z1&3 T&D Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Within 30 days after receipt from EPA of a draft of the OU1 Remedial Action Work Plan, Settling Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the SDs' Z1&3 T&D Supervising Contractor. With respect to any contractor proposed to be the SDs' Z1&3 T&D Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP"). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA. EPA will issue either a notice of disapproval or an authorization to proceed regarding hiring of the proposed SDs' Z1&3 T&D Supervising Contractor. If at any time thereafter, Settling Defendants propose to change an SDs' Z1&3 T&D Supervising Contractor, Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new SDs' Z1&3 T&D Supervising Contractor performs, directs, or supervises any SDs' Z1&3 T&D Work under this Consent Decree.

b.   If EPA disapproves a proposed SDs' Z1&3 T&D Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days after receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days after EPA's authorization to proceed.

c.   If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendant may seek relief under Section XV (Force Majeure).

10.   SDs' Z1&3 Transportation and Disposal Work.

a.   Within 30 days after receipt from EPA of a draft of the OU1 Remedial Action Work Plan, Settling Defendants shall submit to EPA and the State an SDs' Z1&3 T&D Work Plan. The SDs' Z1&3 T&D Work Plan shall provide for the Transportation of Waste Material out of Zone 1 and/or Zone 3 (except for Waste Material at Z1&3 Excluded Properties) and the Disposal of such Waste Material at a licensed Subtitle C or Subtitle D landfill, as

12

applicable, in accordance with this Consent Decree, the ROD, and the Z1&3 Statement of Work attached as Appendix B.  Upon its approval by EPA, the SDs' Z1&3 T&D Work Plan shall be incorporated into and enforceable under this Consent Decree.  As part of the SDs' Z1&3 T&D Work Plan, Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the SDs' Z1&3 T&D Work Plan that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.  The Health and Safety Plan shall include a Traffic and Accident Management Plan and a Contingency Plan.

        b.      Upon approval of the SDs' Z1&3 T&D Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and upon issuance of the final OU1 Remedial Action Work Plan by EPA, Settling Defendants shall implement the activities required under the SDs' Z1&3 T&D Work Plan consistent with the time frames set forth in the approved Plan.  Settling Defendants shall submit to EPA and the State all reports and other deliverables required under the approved SDs' Z1&3 T&D Work Plan in accordance with the approved schedule for review and approval pursuant to Section VIII (EPA Approval of Plans, Reports, and Other Deliverables).  Unless otherwise directed by EPA, Settling Defendants shall not commence the SDs' Z1&3 T&D Work prior to EPA's issuance of the final OU1 Remedial Action Work Plan.  Settling Defendants are not required to perform Transportation and Disposal Work at the Z1&3 Excluded Properties.

      11.    Settling Defendants shall continue to implement the SDs' Z1&3 T&D Work Plan until:  (i) in Zone 1, EPA issues a Certification of Completion of SDs' Z1 T&D Work pursuant to Subparagraph 34.b (Certification of Completion of SDs' Z1 T&D Work); and (ii) in Zone 3, EPA issues a Certification of Completion of SDs' Z3 T&D Work pursuant to Subparagraph 34.d (Certification of Completion of SDs' Z3 T&D Work).

      12.    Modification of Z1&3 SOW or Related Work Plans.

        a.      If EPA determines that it is necessary to modify, with respect to the performance of T&D activities, the SDs' Z1&3 T&D Work specified in the Z1&3 SOW and/or in the SDs' Z1&3 T&D Work Plan developed pursuant to the Z1&3 SOW to achieve and maintain the Performance Standards, to carry out and maintain the effectiveness of the remedy set forth in the ROD, or to protect human health or the environment, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Settling Defendants of such modification.  If Settling Defendants object to the modification they may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 58 (Record Review).

        b.      The Z1&3 SOW and/or the SDs' Z1&3 T&D Work Plan shall be modified: (1) in accordance with the modification issued by EPA; or (2) if Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute.  The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Defendants shall implement all SDs' Z1&3 T&D Work required by such modification.

c.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

13.      Nothing in this Consent Decree, the Z1&3 SOW, or the SDs' Z1&3 T&D Work Plan constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the Z1&3 SOW and in SDs' Z1&3 T&D Work Plan will achieve the Performance Standards in Zone 1 or Zone 3.

14.      <u>Off-Site Shipment of Waste Material</u>.

a.      Settling Defendants may ship Waste Material from the Site to an off-site facility only if they verify, prior to any shipment, that the off-site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

b.      Settling Defendants may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator. This notice requirement shall not apply to any off-site shipments when the total quantity of all such shipments will not exceed ten cubic yards. The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. Settling Defendants also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. Settling Defendant shall provide the written notice before the Waste Material is shipped.

## VII.    REPORTING REQUIREMENTS AND CONSULTATION OPPORTUNITIES

15.      <u>Monthly Progress Reports</u>. In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA and to the State one copy of a written monthly progress report that: (a) describes the SDs' Z1&3 T&D actions that have been taken during the previous month, including a summary of the type and quantity of Waste Material shipped and the name and location of the receiving facility(ies); (b) identifies all plans and other deliverables, if any, required by this Consent Decree that were completed and submitted during the previous month; (c) includes information regarding unresolved delays encountered or anticipated that may affect the future schedule for implementation of the SDs' Z1&3 T&D Work, and a description of efforts made to mitigate those delays or anticipated delays; and (d) includes any modifications to the SDs' Z1&3 T&D Work Plan or other schedules, if any, that Settling Defendants have proposed to EPA or that have been approved by EPA. Settling Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following EPA's approval of the SDs' Z1&3 T&D Work Plan until EPA issues a Certification of Completion of the SDs' Z3 T&D Work pursuant to Paragraph 34.d; provided, however, Settling Defendants shall not be required to submit a monthly progress report for any month in which no activity under the SDs' Z1&3 T&D Work Plan occurs. The monthly progress reports required by this Paragraph may be

14

submitted electronically unless EPA requests otherwise. If requested by EPA or the State, Settling Defendants shall also provide briefings to EPA and the State to discuss the progress of the SDs' Z1&3 T&D Work. Such briefings may occur telephonically if agreed by EPA and Settling Defendants.

16.     Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any of the SDs' Z1&3 T&D activity, including, but not limited to, implementation of the SDs' Z1&3 T&D Work Plan, no later than seven days prior to the performance of the activity.

17.     Release Reporting. Upon the occurrence of any event during performance of the SDs' Z1&3 T&D Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency at 312 353-2318. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

18.     Within 20 days after the onset of such an event, Settling Defendants shall furnish to EPA and the State a written report, signed by Settling Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto. Within 30 days after the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

19.     Submission and Certification of Deliverables. Settling Defendants shall submit one hard copy of all plans, reports, data, and other deliverables required by the Z1&3 SOW, the SDs' Z1&3 T&D Work Plan, or any other approved plans to EPA and the State in accordance with the schedules set forth in the Z1&3 SOW and such plans. At the same time, Settling Defendants shall submit an additional copy to EPA and the State in electronic form.

20.     All deliverables submitted by Settling Defendants to EPA and the State that purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Defendants.

21.     Consultation and Meeting Opportunities. To facilitate the implementation of the Z1&3 Remedial Design and the Z1&3 Remedial Action, EPA shall invite the State's Project Coordinator, Settling Defendants' Project Coordinator, the SDs' Z1&3 T&D Supervising Contractor, and any other representative(s) of Settling Defendants that EPA may so decide to invite to participate in periodic (generally weekly) conference calls between EPA, its contractor, and any other appropriate participants to the call to discuss the status, progress, and/or other relevant matters regarding the Z1&3 Remedial Design and the Z1&3 Remedial Action. EPA also shall provide to Settling Defendants' Project Coordinator an abridged version of the monthly progress reports that EPA's contractor prepares during the Z1 Work and the Z3 Work.

15

These reports shall be abridged to redact Confidential Business Information, Personal Identifying Information, trade secrets, unique solutions, and any other material protected from disclosure under the Freedom of Information Act.

## VIII.   EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

22.   <u>Initial Submissions</u>.

a.      After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA shall: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.      EPA also may modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Z1 Work and/or the Z3 Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

23.   <u>Resubmissions</u>.  Upon receipt of a notice of disapproval under Paragraph 22.a.(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 22.a.(2), Settling Defendants shall, within 14 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendants to correct the deficiencies; or (e) any combination of the foregoing.

24.   <u>Material Defects</u>.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 22.b.(2) or 23 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 61.  The provisions of Section XVI (Dispute Resolution) and Section XVII (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Defendants' submissions under this Section.

25.   <u>Implementation</u>.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 22 (Initial Submissions) or Paragraph 23 (Resubmissions) of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Defendants shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XVI (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 22 or 23 shall not relieve Settling Defendant of any liability for stipulated penalties under Section XVII (Stipulated Penalties).

## IX.  PROJECT COORDINATORS

26.    Within 20 days after lodging this Consent Decree, Settling Defendants, the State, and EPA will notify each other, in writing, of the name, address, and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the SDs' Z1&3 T&D Work. Settling Defendants' Project Coordinator shall not be an attorney for either Settling Defendant in this matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

27.    Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300.  EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any of the SDs' Z1&3 T&D Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

28.    EPA's Project Coordinator, the State's Project Coordinator, and Settling Defendants' Project Coordinator will meet, at a minimum, on a monthly basis.  Such meetings may occur telephonically by agreement of the Project Coordinators.

## X.    PERFORMANCE GUARANTEE

29.    In order to ensure the full and final completion of Z1&3 Work, Settling Defendants shall establish and maintain a performance guarantee, initially in the amount of $21 million (hereinafter "Estimated Cost of the Z1&3 Work") for the benefit of EPA.  The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms:

a.    A surety bond unconditionally guaranteeing payment and/or performance of the Z1&3 Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue

17

letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

        c.     A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency; or

        d.     A policy of insurance that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that is eligible to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency.

        30.     Settling Defendants have selected, and EPA has found satisfactory, as an initial performance guarantee, a Surety Bond pursuant to Paragraph 29.a, in the form attached hereto as Appendix E. Within ten days after the Effective Date, Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix E, and such performance guarantee(s) shall thereupon be fully effective. Within 30 days after the Effective Date, Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer in accordance with Section XXIII (Notices and Submissions), with a copy to the United States, EPA, and the State as specified in Section XXIII.

        31.     In the event that EPA determines at any time that a performance guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Z1&3 Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Z1&3 Work or for any other reason, Settling Defendants, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 29 that satisfies all requirements set forth in this Section X; provided, however, that if any Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that the Settling Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for the Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 60 days. On day 30, Settling Defendant shall provide to EPA a status report on its efforts to obtain the revised or alternative form of guarantee. In seeking approval for a revised or alternative form of performance guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 33.b(2). Settling Defendants' inability to post a performance guarantee for completion of the Z1&3 Work

shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant to complete the SDs' Z1&3 T&D Work in strict accordance with the terms of this Consent Decree.

32.     Funding for Z1&3 Work Takeover.  The commencement by EPA of an SDs' Z1&3 T&D Work Takeover pursuant to Paragraph 75 and/or the failure by Settling Defendants to timely pay any costs due under Section XIII (Payments for Z1&3 Future Response Costs and State's Z1&3 Future Response Costs) shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 29.a, 29.b, 29.c, or 29.d, subject to Settling Defendants' right to invoke the dispute resolution procedures set forth in Section XVI (Dispute Resolution).  At such time as EPA commences an SDs' Z1&3 T&D Work Takeover and/or Settling Defendants fail to timely pay any costs due, EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the SDs' Z1&3 T&D Work assumed by EPA under the SDs' Z1&3 T&D Work Takeover and/or as needed to continue and complete the Z1 Work and/or the Z3 Work.  Upon the commencement of an SDs' Z1&3 T&D Work Takeover and/or the failure by Settling Defendants to timely pay any costs due, if for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the SDs' Z1&3 T&D Work assumed by EPA under the SDs' Z1&3 T&D Work Takeover and/or to obtain any payment due under Section XIII, Settling Defendants shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the remainder of the Z1&3 Work as of such date, as determined by EPA.  In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Defendants provide a substitute performance guarantee mechanism in accordance with this Section X no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee.  All of EPA's costs associated with an SDs' Z1&3 T&D Work Takeover and all Z1&3 Future Response Costs and all State Z1&3 Future Response Costs not reimbursed under this Paragraph shall be reimbursed under Section XIII (Payments for Z1&3 Future Response Costs and State's Z1&3 Future Response Costs).

33.     Modification of Amount and/or Form of Performance Guarantee.

a.     Reduction of Amount of Performance Guarantee.

(1)     If, pursuant to Paragraph 39.b.(4), Settling Defendants elect to pay more than the $5 million due under Paragraph 39.b.(2), Settling Defendants may, without first seeking EPA's approval, reduce the amount of the performance guarantee by the additional amount above $5 million that they have elected to pay.  Such reduction shall be made only after payment is made pursuant to Section XIII.

19

(2)     After Settling Defendants make the $7.5 million payment required by Paragraph 39.b.(3) (or such larger sum as they may elect to pay pursuant to Paragraph 39.b.(4)), Settling Defendants may, without first seeking EPA's approval, reduce the amount of the performance guarantee by the total amount of the payment.

(3)     Thereafter, if Settling Defendants believe that the estimated cost of completing the Z1&3 Work has diminished below the outstanding amount of the performance guarantee, Settling Defendants may, on the anniversary of their payment under Paragraph 39.b.(3) (whether it is the required $7.5 million or some larger amount), or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Z1&3 Work. Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Z1&3 Work and the basis upon which such cost was calculated. In seeking approval for a reduction in the amount of the performance guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 33.b.(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 33.a. If EPA decides to accept Settling Defendants' proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Defendants' written proposal or to some other amount as selected by EPA, EPA will notify Settling Defendants of such decision in writing. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Z1&3 Work shall be deemed to be the estimated cost of completing the Z1&3 Work set forth in EPA's written decision. After receiving EPA's written decision, Settling Defendants may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 33.b.(2). In the event of a dispute, Settling Defendants may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XVI (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 31 or 33.b.

b.     Change of Form of Performance Guarantee.

(1)     If, after the Effective Date, Settling Defendants desire to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Settling Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 33.b.(2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to

challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)     Settling Defendants shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Z1&3 Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding. The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendants shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXIII (Notices and Submissions). EPA will notify Settling Defendants in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph. Within ten days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXIII (Notices and Submissions), with a copy to the United States, EPA, and the State as specified in Section XXIII.

c.     Release of Performance Guarantee. Settling Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph. If Settling Defendants receive written notice from EPA in accordance with Paragraph 35 that the Z1&3 Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendants in writing, Settling Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, Settling Defendants may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XVI (Dispute Resolution).

## XI.   CERTIFICATIONS OF COMPLETION

34.    Completion of SDs' Z1 T&D Work and SDs' Z3 T&D Work.

a.     SDs' Z1 T&D Work. Within 30 days after Settling Defendants have submitted their Final SDs' Z1 T&D Work Report, as identified in the Z1&3 SOW, Settling Defendants shall schedule and conduct a pre-certification meeting to be attended by Settling Defendants, EPA, and the State. If, after the pre-certification meeting, Settling Defendants still

21

believe that the SDs' Z1 T&D Work has been completed, they shall submit a written report requesting certification to EPA for approval, pursuant to Section VIII (EPA Approval of Plans, Reports, and Other Deliverables), with a copy to the State, within 30 days after the meeting. In the report requesting certification, Settling Defendants' Project Coordinator shall state that the SDs' Z1 T&D Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or Settling Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after the pre-certification meeting and receipt and review of the written report requesting certification, EPA determines, after reasonable opportunity for review and comment by the State, that the SDs' Z1 T&D Work, or any portion thereof, has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the SDs' Z1 T&D Work. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the Z1&3 SOW or require Settling Defendants to submit a schedule to EPA for approval pursuant to Section VIII (EPA Approval of Plans, Reports, and Other Deliverables). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedule established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XVI (Dispute Resolution).

      b.    <u>Certification of Completion of the SDs' Z1 T&D Work</u>. If, based on the initial meeting, the final SDs' Z1 T&D Work report, and/or the report requesting Certification of Completion of the SDs' Z1 T&D Work, EPA concludes, after a reasonable opportunity for review and comment by the State, that Settling Defendants have completed the SDs' Z1 T&D Work, EPA will so certify in writing to Settling Defendants. This certification shall constitute the Certification of Completion of the SDs' Z1 T&D Work for purposes of this Consent Decree. Certification of Completion of the SDs' Z1 T&D Work shall not affect Settling Defendants' remaining obligations under this Consent Decree. Nothing in this Paragraph or this Consent Decree shall require Defendants to perform Transportation and Disposal Work on Z1 Excluded Properties.

      c.    <u>SDs' Z3 T&D Work</u>. The Parties shall comply with the provisions of Paragraph 34.a except that each reference to "Z1" in Paragraph 34.a shall, for purposes of this Paragraph 34.c, be "Z3."

d.      Certification of Completion of the SDs' Z3 T&D Work. The Parties shall comply with the provisions of Paragraph 34.b except that each reference to "Z1" in Paragraph 34.b shall, for purposes of this Paragraph 34.d, be "Z3."

35.      Completion of Z1&3 Work Except for Response Actions at the Z1&3 Excluded Properties.

a.      Within 180 days after EPA concludes that all phases of the Z1&3 Work have been fully performed, except for response actions at the Z1&3 Excluded Properties and the payment of all amounts due under Paragraphs 41 through 43, EPA shall schedule and conduct a pre-certification meeting to be attended by EPA, the State, and Settling Defendants. The meeting shall address issues related to the Z1&3 Excluded Properties, whether all contractor invoices for the Z1 Work and the Z3 Work have been received, whether all invoices issued by the State pursuant to Paragraph 44 have been paid, and any other matters that the Parties may wish to raise. Unless EPA concludes after the meeting that all Z1&3 Work, except for response actions at the Z1&3 Excluded Properties and the payment of any amounts due under Paragraphs 41 through 43, is not complete, EPA shall prepare and issue: (i) the accounting and bill under Paragraph 41; (ii) a bill under Paragraph 43.d.(1) for the cashout of the Z1&3 Excluded Non-Residential Properties; and (iii) a bill under Paragraph 43.e.(1) for the cashout of the Z1&3 Excluded Residential Properties. Settling Defendants thereafter shall pay the amount due under Paragraph 41 in accordance with the provisions of Paragraph 41 and shall either pay or opt-out of the payments sought under Paragraphs 43.d and 43.e in accordance with the provisions of those subparagraphs.

b.      If EPA concludes after the meeting with Settling Defendants that all Z1&3 Work, except for response actions at the Z1&3 Excluded Properties and the payment of any amounts due under Paragraphs 41 through 43, is not complete, EPA will notify Settling Defendants of the additional activities that must be undertaken to complete the Z1&3 Work (except for the response actions at the Z1&3 Excluded Properties). To the extent that any of these activities require Settling Defendants to perform Z1&3 T&D Work, Settling Defendants shall perform all activities described in the notice in accordance with the specification and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XVI (Dispute Resolution).

c.      If, after receipt of all payments due under Paragraphs 41 and 43, EPA concludes, after a reasonable opportunity for review and comment by the State, that all of Settling Defendants' obligations under this Consent Decree have been satisfied except for any payments due under Paragraphs 42 and 44 and any activities under Section XXII (Retention of Records), EPA shall issue a Certification of Completion of the Z1&3 Work Except for Response Actions at the Z1&3 Excluded Properties. Settling Defendants' obligations, if any, to pay Z1&3 Future Response Costs pursuant to Paragraph 42 or State Z1&3 Future Response Costs pursuant to Paragraph 44 shall not terminate upon EPA's issuance of a Certification of Completion of the Z1&3 Work Except for Response Actions at the Z1&3 Excluded Properties.

## XII.   EMERGENCY RESPONSE

36.      If any action or occurrence during the performance of the SDs' Z1&3 T&D Work causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 37, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, Settling Defendants shall notify the EPA Emergency Response Section, Region 5, at (312) 353-2318.  Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the Z1&3 SOW.  In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendants shall reimburse EPA and the State all costs of the response action under Section XIII (Payments for Z1&3 Future Response Costs and State's Z1&3 Future Response Costs).

37.      Subject to Section XVIII (Covenants by Plaintiff), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States or the State (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

## XIII.  PAYMENTS FOR Z1&3 FUTURE RESPONSE COSTS AND STATE'S Z1&3 FUTURE RESPONSE COSTS

38.      Payments by Settling Defendants for Z1&3 Future Response Costs.  Settling Defendants shall pay to EPA all Z1&3 Future Response Costs not inconsistent with the NCP. Each payment made by Settling Defendants pursuant to Paragraphs 39 through 43 shall be deposited by EPA in the USS Lead Z1&3 Special Account, which is associated with Site/Spill ID Number 05 3J.

39.      Fixed Prepayments of Certain Z1&3 Future Response Costs.

a.      Deposit Information and Payment Instructions.  Settling Defendants shall make all payments required by Paragraph 39 in accordance with the payment instructions set forth in Paragraph 45.a.

b.      Fixed Prepayments of Certain Z1&3 Future Response Costs.  Settling Defendants shall pay to EPA the following amounts at the following times as prepayments of Z1&3 Future Response Costs:

24

        (1)      Settling Defendants shall pay $1,000,000 by no later than 14 days after the Effective Date of this Consent Decree; and

        (2)      Settling Defendants shall pay $5,000,000 by no later than 14 days after Settling Defendants receive, by certified mail, notice from EPA that EPA has completed the final Z1&3 Remedial Design Work Plan; and

        (3)      Settling Defendants shall pay $7,500,000 by:

                1.      21 days after Settling Defendants receive notice, by certified mail, from EPA that either: (i) the Z1 Work (excluding any activities related to the Z1&3 Excluded Properties located in Zone 1) has been substantially completed; or (ii) the preparation of individual Remedial Design Property Diagrams for some properties within Zone 3 has commenced; or

                2.      Such other date as EPA and the Settling Defendants may agree upon in writing.

        (4)      To the extent that Settling Defendants wish to increase the amount of the prepayment that they make under Paragraphs 39.b.(2) and/or (3), Settling Defendants shall be entitled to do so; provided however, that they first must notify the Department of Justice and EPA of the amount they intend to pay so that appropriate payment instructions under Paragraph 45.a can be developed.

        c.      Settling Defendants shall not be deemed to have violated the deadlines in Paragraph 39.b if Settling Defendants do not receive the payment instructions described in Paragraph 45.a at least five business days before payment is due.  If, for any of the required payments, Settling Defendants do not receive the payment instructions at least five business days before the payment is due, Settling Defendants shall make the required payment no later than five business days after receipt of the payment instructions.

    40.    Additional Prepayments of Certain Z1&3 Future Response Costs Based on Projected Shortfalls to Complete the Z1 Work or the Z3 Work.

        a.      Payment Instructions.  Settling Defendants shall make all payments required by Paragraph 40 in accordance with the payment instructions set forth in Paragraph 45.b.

      b.    <u>Definitions</u>.  For purposes of this Paragraph 40, the following definitions shall apply:

      (1)    "Z1 Cost Completion Projection" shall mean the sum of any direct costs already incurred as of the date of the Projection but not paid for with Z1&3 Available Funds (*e.g.*, EPA's intramural costs such as payroll costs) plus EPA's projection of the direct costs EPA expects to incur, as of the date of the Projection, to complete the Z1 Work; and

      (2)    "Z3 Cost Completion Projection" shall mean the sum of any direct costs already incurred as of the date of the Projection but not paid for with Z1&3 Available Funds (*e.g.*, EPA's intramural costs such as payroll costs) plus EPA's projection of the direct costs EPA expects to incur, as of the date of the Projection, to complete the Z3 Work.

      c.    <u>Notification of Projected Shortfall and Payment Amount</u>.

      (1)    <u>Z1 Work</u>.  If, during the course of the Z1 Work, the Z1&3 Available Funds fall below $2,000,000, EPA will notify Settling Defendants and include in the notification a Z1 Cost Completion Projection, the amount of Z1&3 Available Funds, and a bill for payment that shall be calculated using the following equation:

Payment = (Z1 Cost Completion Projection – Z1&3 Available Funds) + $1,000,000

      (2)    <u>Z3 Work</u>.  If, during the course of the Z3 Work, the Z1&3 Available Funds fall below $2,000,000, EPA will notify Settling Defendants and include in that notification a Z3 Cost Completion Projection, the amount of Z1&3 Available Funds, and a bill for payment that shall be calculated using the following equation:

Payment = (Z3 Cost Completion Projection – Z1&3 Available Funds) + $1,000,000

      d.    <u>Payments by Settling Defendants</u>.  By no later than 21 days after receiving a notice, by certified mail, from EPA pursuant to either Paragraph 40.c.(1) or Paragraph 40.c.(2), Settling Defendants shall pay the bill included in the notice.  Settling Defendants shall not contest any bill sent under this Paragraph 40 at the time it is sent.  Instead, at the time EPA sends the bill under Paragraph 41, Settling Defendants, in accordance with the requirements and limitations of Paragraph 46, may object to Z1&3 Future Response Costs that were paid through funds provided under this Paragraph 40.

      e.    Nothing in this Paragraph 40 shall limit EPA's ability to demand a payment under either Paragraph 40.c.(1) or Paragraph 40.c.(2) more than one time.

f.     In its unreviewable discretion, EPA may elect to demand a payment under either Paragraph 40.c.(1) or Paragraph 40.c.(2) that is calculated using less than $1,000,000 as the value added at the end of the payment equation.

41.    <u>Z1&3 Future Response Cost Payment with Accounting Statement</u>.

a.     <u>Payment Instructions</u>.  Settling Defendants shall make all payments required by Paragraph 41 in accordance with the payment instructions set forth in Paragraph 45.b.

b.     After EPA has concluded that all phases of the Z1&3 Work, except for response actions at the Z1&3 Excluded Properties and the payment of any amounts under Paragraphs 41, 42, 43, and/or 44, is complete, EPA will prepare an accounting of Z1&3 Future Response Costs that will include an Itemized Cost Summary of all Z1&3 Future Response Costs, including direct and indirect costs, that EPA has incurred.  In the accounting, EPA will credit Settling Defendants for all payments received under Paragraphs 39 and 40, not including Interest on those payments.  EPA will send a bill, by certified mail, to Settling Defendants for the remaining, outstanding Z1&3 Future Response Costs, including Interest on indirect costs ("Remaining, Outstanding Z1&3 Future Response Costs").  Settling Defendants shall pay the bill within 60 days after receipt except as otherwise provided in Paragraph 46.

42.    <u>Periodic Billing for any Future Response Costs Not Previously Billed</u>.

a.     <u>Payment Instructions</u>.  Settling Defendants shall make all payments required by Paragraph 42 in accordance with the payment instructions set forth in Paragraph 45.b.

b.     After receipt of the payment in Paragraph 41, EPA will send to Settling Defendants, on a periodic basis if and as necessary, a bill requiring payment that includes an Itemized Cost Summary of all Z1&3 Future Response Costs (which includes direct and indirect costs incurred by EPA, its contractors, and DOJ) which shall show, *inter alia*, all Z1&3 Future Response Costs that EPA has not included in any previous bill and that are owed.  Settling Defendants shall pay the bill within 60 days after receipt except as otherwise provided in Paragraph 46.

43.    <u>Cashout of Z1&3 Excluded Properties or Opt-Out</u>.

a.     <u>Payment Instructions</u>.  Settling Defendants shall make all payments required by Paragraph 43 in accordance with the payment instructions set forth in Paragraph 45.b.

27

b.      Z1&3 Excluded Residential Properties and Z1&3 Excluded Non-Residential Properties.  At such time as EPA concludes, after consultation with the State, that it will be unable to timely obtain consent from one or more property owners within Zone 1 and/or Zone 3 to sample and/or to remediate its/their properties, EPA shall prepare a preliminary list of all unsampled and/or unremediated residential properties and a preliminary list of all unsampled and/or unremediated non-residential properties  Upon preparation of the preliminary lists, EPA will provide them to the State and Settling Defendants.  Thereafter, EPA and Settling Defendants, with a reasonable opportunity for comment by the State, will informally discuss the lists.  At such time as EPA so decides, EPA will notify Settling Defendants, in writing, with a copy to the State, that informal discussions have ceased.  EPA will then provide to Settling Defendants, with a copy to the State, a final list of the residential properties that are unsampled and/or unremediated ("Z1&3 Excluded Residential Properties") and a final list of the non-residential properties that are unsampled and/or unremediated ("Z1&3 Excluded Non-Residential Properties").

c.      Settling Defendants' T&D Costs.  By no later than 10 days after receipt of the final lists of Z1&3 Excluded Residential Properties and the Z1&3 Excluded Non-Residential Properties, Settling Defendants shall provide EPA with the following:  the total of SDs' T&D costs for residential properties in Zone 1; the total of SDs' T&D costs for residential properties in Zone 3; the SDs' average T&D cost per cubic yard for residential properties remediated in Zone 1; the SDs' average T&D cost per cubic yard for residential properties remediated in Zone 3; and the SDs' T&D cost per cubic yard for non-residential properties remediated (broken down by property address, if possible).

d.      Payment or Opt-out for Z1&3 Excluded Non-Residential Properties.

(1)      EPA shall send a bill, by certified mail, to Settling Defendants to cash out their liabilities for the Z1&3 Excluded Non-Residential Properties.  The bill shall equal the sum of the individual cash-out payments for each Z1&3 Excluded Non-Residential Property.   The individual cash-out payments for each Z1&3 Excluded Non-Residential Property shall be calculated using the following formula:

Individual Cash-Out Payment = EPA's Cost Estimate for that Particular Z1&3 Excluded Non-Residential Property x 2

Where:  "EPA's Cost Estimate for that Particular Z1&3 Excluded Non-Residential Property" shall equal the estimate of the direct and indirect costs (including T&D costs) that EPA expects to incur, based on all relevant information, for the specific non-residential property in question.

Defendants shall pay the bill within 60 days after receipt except as provided in Paragraph 43.d.(2).

(2)      Opting-Out of the Payment for Z1&3 Excluded Non-Residential Properties.  If the bill sent pursuant to Paragraph 43.d.(1) is greater than $1 million,

28

Settling Defendants shall have the option not to make the payment. By no later than 30 days after receipt of the bill, Settling Defendants shall notify EPA in writing about whether they are exercising this option. If Settling Defendants notify EPA that they are opting-out of the payment, the United States' and the State's covenants provided to Settling Defendants in Paragraph 73 of this Consent Decree shall no longer be in effect with respect to, and the "matters addressed" as defined by Paragraph 84 of this Consent Decree shall no longer include, response actions or response costs related to the Z1&3 Excluded Non-Residential Properties. If the bill is $1 million or less, or if, within 30 days after receipt of the bill, Settling Defendants do not elect to opt-out of paying a bill that is greater than $1 million, Settling Defendants shall pay the bill within 60 days after receipt and the United States' and the State's covenants provided in Paragraph 73 of this Consent Decree and the full "matters addressed" as defined by Paragraph 84 of this Consent Decree shall continue in effect. Settling Defendants shall not be entitled to object to a bill sent pursuant to Paragraph 43.d.(1) under the terms of Paragraph 46; their only remedy shall be to opt-out of the payment. Nothing in this Paragraph 43.d, however, shall preclude EPA and Settling Defendants from engaging in informal discussions either before or for 30 days after EPA issues a bill under Paragraph 43.d.(1) for the purpose of discussing any matter related to the bill. In its sole discretion, and not subject to review under Section XVI, EPA may elect, based on such discussions, to modify the bill and re-issue it (if it already has been sent). If EPA re-issues a bill, the deadlines under this Paragraph 43.d shall commence upon the date of the receipt of the re-issued bill.

      e.    Payment or Opt-out for Z1&3 Excluded Residential Properties.

    (1)    EPA shall send a bill, by certified mail, to Settling Defendants to cash out their liabilities for the Z1&3 Excluded Residential Properties. The bill shall be calculated using the following formula:

$$\text{Bill} = \text{Zone 1 Cash-Out} + \text{Zone 3 Cash-Out}$$

Where:

Zone 1 Cash-Out = Average Residential Property Cleanup Cost in Zone 1 x Number of residential properties that are Excluded Properties in Zone 1 x 2

      Where: "Average Residential Property Cleanup Cost in Zone 1" = EPA's average direct and indirect costs per residential property remediated in Zone 1 + [(Total of SDs' T&D costs for residential properties in Zone 1 divided by Number of residential properties remediated in Zone 1) x 1.6].

Zone 3 Cash-Out = [the same formula as set forth for the Zone 1 Payment except that each reference to "Zone 1" or "Z1" shall be deleted and "Zone 3" or "Z3" shall be substituted]

Defendants shall pay the bill within 60 days after receipt except as provided in Paragraph 43.e.(2).

(2)     Opting-Out of the Payment for Z1&3 Excluded Residential Properties. If the bill sent pursuant to Paragraph 43.e.(1) is greater than $2 million, Settling Defendants shall have the option not to make the payment. By no later than 30 days after receipt of the bill, Settling Defendants shall notify EPA in writing about whether they are exercising this option. If Settling Defendants notify EPA that they are opting-out of the payment, the United States' and the State's covenants provided to Settling Defendants in Paragraph 73 of this Consent Decree shall no longer be in effect with respect to, and the "matters addressed" as defined by Paragraph 84 of this Consent Decree shall no longer include, response actions or response costs related to the Z1&3 Excluded Residential Properties. If the bill is $2 million or less, or if, within 30 days after receipt of the bill, Settling Defendants do not elect to opt-out of paying a bill that is greater than $2 million, Settling Defendants shall pay the bill within 60 days after receipt and the United States' and the State's covenants provided to Settling Defendants in Paragraph 73 of this Consent Decree and the full "matters addressed" as defined by Paragraph 84 of this Consent Decree shall continue in effect. Settling Defendants shall not be entitled to object to a bill sent pursuant to Paragraph 43.e.(1) under the terms of Paragraph 46; their only remedy shall be to opt-out of the payment. Nothing in this Paragraph 43.e, however, shall preclude EPA and Settling Defendants from engaging in informal discussions either before or for 30 days after EPA issues a bill under Paragraph 43.e.(1) for the purpose of discussing any matter related to the bill. In its sole discretion, and not subject to review under Section XVI, EPA may elect, based on such discussions, to modify the bill and re-issue it (if it already has been sent). If EPA re-issues a bill, the deadlines under this Paragraph 43.e shall commence upon the date of the receipt of the re-issued bill.

44.     Payment by Settling Defendants to State. Settling Defendants shall pay to the State all State Z1&3 Future Response Costs not inconsistent with the NCP. On a periodic basis, IDEM will send Settling Defendants an invoice requiring payment that includes a cost summary. Settling Defendants shall make all payments with 60 days of the date of the invoice except as otherwise provided in Paragraph 46. The check and a transmittal letter shall reference the name and address of the party making payment, the invoice number, the Site name, the Civil Action Number, and the IDEM Site Identification Number (USS Lead #7500081 (SZ029)) and shall be sent to:

Indiana Department of Environmental Management
100 N. Senate Avenue, Mail Code 50-10C
Indianapolis, IN  46204-2251

Attention:  Cashier

Any payment received by IDEM after 12:30 pm Eastern Time will be credited on the next business day.  A copy of the transmittal letter shall be sent to IDEM's Project Manager in accordance with Section XXIII (Notices and Submissions).

      45.    Payment Instructions for Payments by Settling Defendants to the United States.

      a.    Instructions for Z1&3 Future Response Costs Prepayments under Paragraph 39.  All payments required under Paragraph 39 shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of Indiana.  The payment instructions provided by the Financial Litigation Unit shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.  The FLU shall provide the payment instructions to:

> Sally D. Prosser
> DuPont Corporate Remediation Group
> Chestnut Run Plaza 715-202
> 974 Centre Road
> Wilmington, DE  19805
> 303.999.2874
> Sally.Prosser@dupont.com

on behalf of Settling Defendants.  Settling Defendants may change the individual to receive payment instructions on their behalf by providing a written notice of such change to the Financial Litigation Unit, United States Attorneys Office, 5400 Federal Plaza, Suite 1500, Hammond, IN  46320, and to the representatives of the United States set forth in Section XXIII (Notices and Submissions).  When making payments under this Subparagraph 45.a, Settling Defendants shall also comply with Paragraph 45.c.  EPA shall deposit all payments made pursuant to the instructions in this Paragraph 45.a to the USS Lead Z1&3 Special Account, which is associated with Site/Spill ID Number 05 3J.

      b.    Instructions for All Payments Except Those Under Paragraph 39 and Except for Stipulated Penalties.  Except for payments made pursuant to Paragraph 39 and for stipulated penalty payments, all other payments required to be made under this Consent Decree shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA  =  021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

When making payments under this Subparagraph 45.b, Settling Defendants shall also comply with Subparagraph 45.c. EPA shall deposit all payments made pursuant to the instructions in this Paragraph 45.b to the USS Lead Z1&3 Special Account, which is associated with Site/Spill ID Number 05 3J.

c. All payments made under Paragraphs 45.a or 45.b shall reference the CDCS Number, Site/Spill ID Number 05 3J, USS Lead Z1&3 Special Account, and DOJ Case Number 90-11-3-10884/1. At the time of any payment required to be made in accordance with Paragraphs 45.a or 45.b, Settling Defendants shall send notice that payment has been made to the United States and to EPA, in accordance with Section XXIII (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at cinwd_acctsreceivable@epa.gov or by mail at 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS Number, Site/Spill ID Number 05 3J, USS Lead Z1&3 Special Account, and DOJ Case Number 90-11-3-10884/1.

d. <u>Instructions for Stipulated Penalty Payments</u>. All payments for stipulated penalties under this Consent Decree shall be made by Fedwire EFT to:

Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045
Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

All payments under this Paragraph 45.d shall reference the CDCS Number, Site/Spill ID Number 05 3J, and DOJ Case Number 90-11-3-10884/1.

46. <u>Objecting to Payments</u>

a. <u>Basis for Objections</u>

(1) Except for payments required pursuant to Paragraph 43.d or 43.e, Settling Defendants may contest Z1&3 Future Response Costs that are direct costs and State Z1&3 Future Response Costs that are direct costs if Settling Defendants determine that EPA or the State, as applicable, has made a mathematical error or included a cost item that is not within the definition of Z1&3 Future Response Costs or State Z1&3 Future Response Costs, as applicable, or if they believe EPA or the State, as applicable, incurred excess costs as a direct result of an EPA or State action, as applicable, that was inconsistent with a specific provision or provisions of the NCP.

(2) Except for payments required pursuant to Paragraph 43.d or 43.e, Settling Defendants may contest Z1&3 Future Response Costs that are indirect costs or

any State Z1&3 Future Response Costs that are indirect costs only if Settling Defendants determine that EPA or the State, as applicable, has made a mathematical error. Settling Defendants shall not contest the methodology that EPA or the State uses to determine its/their indirect cost rate or the value of EPA's or the State's indirect rate(s) for the applicable years. The only basis for an objection to indirect costs is a mathematical error.

> (3)    Settling Defendants may not contest a bill for payment under Paragraph 43.d.(1) or 43.e.(1). Settling Defendants' only remedy shall be to opt-out of the payment under the terms of Paragraph 43.d.(2) or 43.e.(2).

    b.   <u>Timing and Manner of Objection</u>

> (1)    <u>Timing</u>. Except for payments required under Paragraphs 42–44, Settling Defendants shall make any objection only within 60 days after receipt of the accounting under Paragraph 41.b. For payments required under Paragraphs 42–44, Settling Defendants shall make any objection within 60 days after receipt of the bill.

> (2)    <u>Manner</u>. Any objection must be sent to the United States and the State (if contesting a state cost) in accordance with Section XXIII (Notices and Submissions). Any objection under Paragraph 46.a.(1) or (2) shall specifically identify the contested Z1&3 Future Response Cost and/or contested State Z1&3 Future Response Costs and the basis for objection. Any objection under Paragraph 46.a.(3) shall specifically identify the contested issue(s), the basis(es) for the objection, and the amount of the costs, if any, not contested.

    c.   <u>Establishment of Escrow Account for Contested Costs and Payment of Uncontested Costs</u>

> (1)    In the event of an objection, Settling Defendants shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Z1&3 Future Response Costs ("Escrowed Funds") and/or the contested State Z1&3 Future Response Costs ("State Escrowed Funds"). Settling Defendants shall send to the United States and the State, as applicable and as provided in Section XXIII (Notices and Submissions), a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.

> (2)    Simultaneously with the establishment of the escrow account, Settling Defendants shall pay: (i) with respect to a bill sent under Paragraph 41.b, the Remaining, Outstanding Z1&3 Future Response Costs minus the Escrowed Funds; (ii) with respect to a bill sent under Paragraphs 42 or 43, the uncontested Z1&3 Future Response Costs; and (iii) with respect to a bill sent under Paragraph 44, the uncontested

State Z1&3 Future Response Costs. Settling Defendants shall send to the United States and the State, as applicable and as provided in Section XXIII (Notices and Submissions), a transmittal letter identifying the payments made under this Paragraph 46.c.(2).

      d.    Dispute Resolution. Simultaneously with establishment of the escrow account, Settling Defendants shall initiate the Dispute Resolution procedures in Section XVI (Dispute Resolution). If the United States and/or the State, as applicable, prevails in the dispute, Settling Defendants shall pay the sums due (with accrued interest in the escrow account) to the United States and/or the State, as applicable, within five days after the resolution of the dispute. If Settling Defendants prevail concerning any aspect of the contested costs, Settling Defendants shall pay that portion of the costs (plus associated accrued interest in the escrow account) for which they did not prevail to the United States and/or the State, as applicable, within five days after the resolution of the dispute. Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XVI (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendants' obligation to reimburse the United States for its Z1&3 Future Response Costs and the State for the State's Z1&3 Future Response Costs.

      e.    Payment Instructions. All payments to the United States under this Paragraph shall be made in accordance with the payment instructions in Paragraph 45.b. All payments to the State under this Paragraph shall be made in accordance with the payment instructions in Paragraph 44.

      47.    Interest. In the event that any payment for Z1&3 Future Response Costs and/or State Z1&3 Future Response Costs required under this Section is not made by the date required, Settling Defendants shall pay Interest on the unpaid balance. The Interest on the prepayments of the Z1&3 Future Response Costs due under Paragraph 39 shall begin to accrue on the due dates of those payments. The Interest on all other payments due under this Section shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 62.

## XIV.   INDEMNIFICATION AND INSURANCE

      48.    Settling Defendants' Indemnification of the United States and the State.

      a.    The United States and the State do not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendants as EPA's authorized representative under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or

34

omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Settling Defendants agree to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

b.      The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 48, and shall consult with Settling Defendants prior to settling such claim.

49.      Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of any SDs' Z1&3 T&D Work, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of any SDs' Z1&3 T&D Work, including, but not limited to, claims on account of construction delays.

50.      No later than 15 days before commencing any on-site SDs' Z1&3 T&D Work, Settling Defendants shall secure, and shall maintain until the first anniversary after issuance of EPA's Certification of Completion of the SDs' Z3 T&D Work pursuant to Paragraph 34.d of Section XI (Certifications of Completion), commercial general liability insurance with limits of $1 million, for any one occurrence, and automobile liability insurance with limits of $1 million, combined single limit, naming the United States and the State as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Defendants pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the SDs' Z1&3 T&D Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the SDs' Z1&3 T&D Work under this Consent Decree, Settling Defendants shall provide to EPA and the State certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling

35

Defendants demonstrate by evidence satisfactory to EPA and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XV.    FORCE MAJEURE

51.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the SDs' Z1&3 T&D Work or to pay Z1&3 Future Response Costs or to pay the State Z1&3 Future Response Costs or a failure to achieve the Performance Standards in Zone 1 and/or Zone 3.

52.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Defendants intend or may intend to assert a claim of force majeure, Settling Defendants shall notify EPA's Project Coordinator and the State's Project Coordinator, orally or, in the absence of EPA's Project Coordinator, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, within 72 hours of when Settling Defendants first knew that the event might cause a delay. Within 7 days thereafter, Settling Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendants shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendants from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 51 and whether Settling Defendant has exercised its best efforts under Paragraph 51, EPA may, in its unreviewable discretion, excuse in writing Settling Defendants' failure to submit timely notices under this Paragraph.

36

53.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

54.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XVI (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 51 and 52. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XVI.   DISPUTE RESOLUTION

55.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States or the State to enforce obligations of Settling Defendants that have not been disputed in accordance with this Section.

56.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

57.     Statements of Position.

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and

any supporting documentation relied upon by Settling Defendants. The Statement of Position shall specify Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 58 (Record Review) or Paragraph 59.

      b.     Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 58 (Record Review) or Paragraph 59. Within 14 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

      c.     If there is disagreement between EPA and Settling Defendants as to whether dispute resolution should proceed under Paragraph 58 (Record Review) or Paragraph 59, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 58 and 59.

    58.    Record Review. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval or developed by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

      a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

      b.     The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 58.a. This decision shall be binding upon Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraphs 58.c and 58.d.

      c.     Any administrative decision made by EPA pursuant to Paragraph 58.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendants with the Court and served on all Parties within ten days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion.

       d.     In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 58.a.

59.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

       a.     Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 57, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on Settling Defendants unless, within ten days after receipt of the decision, Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

       b.     Notwithstanding Paragraph S (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

60.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 68. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XVII (Stipulated Penalties).

## XVII.   STIPULATED PENALTIES

61.     Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 62 and 63 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XV (Force Majeure). "Compliance" by Settling Defendants shall include completion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the Z1&3 SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

62.     Stipulated Penalty Amounts – Z1&3 Work (Including Payments and Excluding Plans, Reports, and Other Deliverables).

a.     The following stipulated penalties shall accrue per day for failure to timely make any payment required in Section XIII (Payments for Z1&3 Future Response Costs and State Z1&3 Future Response Costs):

| Penalty Per Day | Period of Noncompliance |
|---|---|
| $  2,500 | 1st through 14th day |
| $  5,000 | 15th through 30th day |
| $ 10,000 | 31st day and beyond |

b.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 62.c:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $  2,000 | 1st through 14th day |
| $  5,000 | 15th through 30th day |
| $  7,500 | 31st day and beyond |

c.     Compliance Milestones.

(1)     Failure to implement the approved SDs' Z1&3 T&D Work Plan in accordance with the term of the Work Plan.

(2)     Failure to comply with each of the requirements for Off-Site Waste Material Shipments set forth in Paragraph 14 of this Consent Decree.

63.     Stipulated Penalty Amounts – Plans, Reports, and other Deliverables and Other Requirements.   The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other plans or deliverables or to satisfy any other requirement of the Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $  1,500 | 1st through 14th day |
| $  3,000 | 15th through 30th day |
| $  5,000 | 31st day and beyond |

64.     In the event that EPA assumes performance of a portion or all of the SDs' Z1&3 T&D Work pursuant to Paragraph 75 (Work Takeover), Settling Defendants shall be liable for a stipulated penalty in the amount of $3 million.  Stipulated penalties under this Paragraph are in

addition to the remedies available under Paragraphs 32 (Funding for Work Takeover) and 75 (Work Takeover).

65.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section VIII (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (b) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraph 58.b or 59.a of Section XVI (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XVI (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

66.     Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether the EPA has notified Settling Defendants of a violation.

67.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XVI (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 45.d (Instructions for Stipulated Penalty Payments).

68.     Penalties shall continue to accrue as provided in Paragraph 65 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days after the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 68.c;

41

c.      If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

69.     If Settling Defendants fail to pay stipulated penalties when due, Settling Defendants shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 68 until the date of payment; and (b) if Settling Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 67 until the date of payment. If Settling Defendants fail to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

70.     The payment of penalties and Interest, if any, shall not alter in any way Settling Defendants' obligation to complete the performance of the SDs' Z1&3 T&D Work or to pay Z1&3 Future Response Costs or to pay State Z1&3 Future Response Costs required under this Consent Decree.

71.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122($l$) of CERCLA, 42 U.S.C. § 9622($l$), provided, however, that the United States shall not seek civil penalties pursuant to Section 122($l$) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

72.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XVIII. COVENANTS BY PLAINTIFFS

73.     <u>Covenants for Settling Defendants by the United States and the State</u>.

a.      <u>By the United States</u>. In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in Paragraph 43.d.(2) (Opting-Out of the Payment for Z1&3 Excluded Non-Residential Properties), Paragraph 43.e.(2) (Opting-Out of the Payment for Z1&3 Excluded Residential Properties), and Paragraph 74 (Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendants

pursuant to Sections 106 and 107(a) of CERCLA for the Z1&3 Work and the Z1&3 Future Response Costs. These covenants shall take effect upon the receipt by EPA of the payment required by Paragraph 39.b.(1) (Fixed Prepayment of Certain Z1&3 Future Response Costs) and any Interest or stipulated penalties due thereon under Paragraph 47 or Section XVII (Stipulated Penalties). These covenants are conditioned upon the complete and satisfactory performance by Settling Defendants of their obligations under this Consent Decree, including but not limited to payment of all Z1&3 Future Response Costs pursuant to Section XIII. These covenants not to sue extend only to Settling Defendants and do not extend to any other person.

b.      By the State. In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in Paragraph 43.d.(2) (Opting-Out of the Payment for Z1&3 Excluded Non-Residential Properties), Paragraph 43.e.(2) (Opting-Out of the Payment for Z1&3 Excluded Residential Properties), and Paragraph 74 (Reservations of Rights), the State covenants not to sue or to take administrative action against Settling Defendants pursuant to Indiana Code 13-25-4 for the Z1&3 Work and the State Z1&3 Future Response Costs. These covenants shall take effect upon the Date of Entry and are conditioned upon the complete and satisfactory performance by Settling Defendants of their obligations under this Consent Decree, including but not limited to payment of all State Z1&3 Future Response Costs pursuant to Paragraph 44. These covenants extend only to Settling Defendants and do not extend to any other person.

74.     Reservations of Rights. The covenants not to sue set forth in Paragraph 73 do not pertain to any matters other than those expressly specified in Paragraph 73. The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiffs' covenants. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendants with respect to:

a.      liability for failure by Settling Defendants to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of Zone 1 and/or Zone 3 of OU1 of the Site;

c.      liability based on the ownership of properties within Zone 1 and/or Zone 3 of OU1 of the Site by Settling Defendants when such ownership commences after signature of this Consent Decree by Settling Defendants;

d.      liability based on the operation of properties within Zone 1 and/or Zone 3 of OU1 of the Site by Settling Defendants when such operation commences after signature of this Consent Decree by Settling Defendants and does not arise solely from Settling Defendants' performance of the SDs' Z1&3 T&D Work;

e.      liability based on Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with Zone 1 and/or Zone 3 of OU1 of the Site, other than as

43

provided in the ROD, the SDs' Z1&3 T&D Work Plan, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants;

      f.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      g.     criminal liability;

      h.     liability for violations of federal or state law that occur during or after implementation of the SDs' Z1&3 T&D Work;

      i.     liability, prior to achievement of the Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 12 (Modification of Z1&3 SOW or Related Work Plans);

      j.     liability for Zone 2, additional operable units at the Site, or the final response action;

      k.     liability for costs that the United States and State will incur regarding the Site but that are not within the definition of Z1&3 Future Response Costs or State Z1&3 Future Response Costs, respectively;

      l.     liability for Past Response Costs;

      m.     liability for response actions and/or response costs undertaken and/or incurred pursuant to Section 121(c) of CERCLA, 42 U.S.C. § 9621(c) relating to Z1 and/or Z3 and/or OU1 and/or the Site;

      n.     if Settling Defendants are entitled to, and do, opt out of the payment requested in Paragraph 43.d.(1), liability for response actions and/or response costs related to the Z1&3 Excluded Non-Residential Properties; and

      o.     if Settling Defendants are entitled to, and do, opt out of the payment requested in Paragraph 43.e.(1), liability for response actions and/or response costs related to the Z1&3 Excluded Residential Properties.

     75.    <u>Work Takeover</u>.

      a.     In the event that EPA determines that Settling Defendants have (1) ceased implementation of any portion of the SDs' Z1&3 T&D Work, or (2) are seriously or repeatedly deficient or late in their performance of the SDs' Z1&3 T&D Work, or (3) are implementing the SDs' Z1&3 T&D Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was

issued and will provide Settling Defendants a period of ten days within which to remedy the circumstance giving rise to EPA's issuance of such notice.

        b.     If, after expiration of the ten-day notice period specified in Paragraph 75.a, Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the SDs' Z1&3 T&D Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 75.b. Funding of Work Takeover costs is addressed in Paragraph 32.

        c.     Settling Defendants may invoke the procedures set forth in Paragraph 58 (Record Review) to dispute EPA's implementation of a Work Takeover under Paragraph 75.b. However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 75.b. until the earlier of (1) the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 58 (Record Review) requiring EPA to terminate such Work Takeover.

    76.    Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XIX.   COVENANTS BY SETTLING DEFENDANTS

    77.    <u>Covenants Not to Sue by Settling Defendants</u>. Subject to the reservations in Paragraph 79, Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Z1&3 Work, the Z1&3 Future Response Costs, and the State Z1&3 Future Response Costs, including, but not limited to:

        a.     any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of law, or any direct or indirect claim for reimbursement from the Indiana Hazardous Substances Fund, Indiana Code 13-25-4, *et seq.*;

        b.     any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Z1&3 Work, the Z1&3 Future Response Costs, the State Z1&3 Future Response Costs, and this Consent Decree; or

        c.     any claims arising out of response actions, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law, relating to the Z1&3 Work, the Z1&3 Future Response Costs, and the State Z1&3 Future Response Costs.

78.     Except as provided in Paragraph 81 (Claims Against De Micromis Parties) and Paragraph 87 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or the State brings a cause of action or issues an order pursuant to any of the reservations in Section XVIII (Covenants by Plaintiffs), other than in Paragraphs 74.a (liability for failure to meet a requirement of the Consent Decree), 74.g (criminal liability), and 74.h (liability for violations of federal/state law during or after implementation of the SDs' Z1&3 T&D Work), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

79.     Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' plan, reports, or other deliverable or activities.

80.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

81.     Claims Against De Micromis Parties.  Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

82.     The waiver in Paragraph 81 (Claims Against De Micromis Parties) shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person meeting the criteria in Paragraph 81 if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.  This waiver also shall not apply to any claim or cause of action against any person meeting the criteria in Paragraph 81 if EPA determines:

a.     that such person has failed to comply with any EPA requests for information or administrative subpoenas issued pursuant to Section 104(e) or 122(e) of

CERCLA, 42 U.S.C. § 9604(e) or 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site, or has been convicted of a criminal violation for the conduct to which this waiver would apply and that conviction has not been vitiated on appeal or otherwise; or

        b.     that the materials containing hazardous substances contributed to the Site by such person have contributed significantly, or could contribute significantly, either individually or in the aggregate, to the cost of response action or Natural Resource restoration at the Site.

## XX.   EFFECT OF SETTLEMENT; CONTRIBUTION

83.    Except as provided in Paragraph 81 (Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Paragraph 81 (Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C.§ 9613(f)(2)–(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

84.    The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, under Indiana Code 13-25-4-27(b), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are the Z1&3 Work, the Z1&3 Future Response Costs, and the State Z1&3 Future Response Costs; provided however, that if Settling Defendants are entitled to, and do, opt out of the payment requested in Paragraph 43.d (Payment or Opt-out for Z1&3 Excluded Non-Residential Properties) and/or Paragraph 43.e (Payment or Opt-out for Z1&3 Excluded Residential Properties), liability for response actions and/or response costs related to the Z1&3 Excluded Non-Residential Properties and/or the Z1&3 Excluded Residential Properties, as applicable, shall not be included in the "matters addressed" in this Consent Decree.

85.    Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

86.    Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and the State within ten days after service of the complaint on such Settling Defendant. In addition, each

Settling Defendant shall notify the United States and the State within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

87.  Res Judicata and Other Defenses.  In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XVIII (Covenants by Plaintiff).

## XXI.  ACCESS TO INFORMATION

88.  Settling Defendants shall provide to EPA and the State, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Z1&3 Work.  Settling Defendants shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Z1&3 Work.

89.  Business Confidential and Privileged Documents.

a.  Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

b.  Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiffs with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and State in redacted form to mask the

48

privileged portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States and the State have had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

      c.     No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States or the State on the grounds that they are privileged or confidential.

90.     No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXII.   RETENTION OF RECORDS

91.     Until ten years after Settling Defendants' receipt of EPA's issuance of its Certification of Completion of the Z1&3 Work Except for Response Actions at the Z1&3 Excluded Properties, each Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Z1&3 Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Z1&3 Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

92.     At the conclusion of this record retention period, Settling Defendants shall notify the United States and the State at least 90 days prior to the destruction of any such Records, and, upon request by the United States or the State, Settling Defendants shall deliver any such Records to EPA or the State. Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege, they shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and the State in redacted form to mask the privileged portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States and the State has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor. However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

93.     Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA and State requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXIII.   NOTICES AND SUBMISSIONS

94.     Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State and Settling Defendants, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:          Chief, Environmental Enforcement Section
                                  Environment and Natural Resources Division
                                  U.S. Department of Justice
                                  P.O. Box 7611
                                  Washington, D.C.  20044-7611
                                  Re: DJ # 90-11-3-10884/1

As to EPA:                        Richard C. Karl
                                  Director, Superfund Division
                                  United States Environmental Protection Agency
                                  Region 5
                                  77 W. Jackson Blvd. (SR-6J)
                                  Chicago, IL 60604-3590

                                  Michael Berkoff
                                  EPA Project Coordinator
                                  United States Environmental Protection Agency
                                  Region 5
                                  77 W. Jackson Blvd. (SR-6J)
                                  Chicago, IL 60604-3590
                                  berkoff.michael@epa.gov

50

Steven Kaiser
Office of Regional Counsel
United States Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL  60604
312 353-3804
kaiser.steven@epa.gov

As to the Regional Financial
Management Officer:

Chief, Program Accounting and Analysis Section
United States Environmental Protection Agency
Region 5, MF-10J
77 West Jackson Blvd.
Chicago, IL  60604-3590


As to the State:

Tim Junk
Indiana Office of the Attorney General
302 W. Washington St.
IGCS – 5th Floor
Indianapolis, IN  46204

Lisa McCoy
Deputy Commissioner of Office of Legal Counsel
Indiana Dep't of Environmental Management
100 North Senate Ave.
IGCN – 13th Floor
Indianapolis, IN  46204

Doug Petroff
Project Manager, Federal Programs
Indiana Dep't of Environmental Management
100 North Senate Ave.
IGCN – 11th Floor
Indianapolis, IN  46204

As to Settling Defendant ARC:

Chris Greco
Deputy Portfolio Manager
Remediation Management
Atlantic Richfield Company
150 West Warrenville Road
Mail Code MC 200-1E

51

Naperville, IL 60563
chris.greco@bp.com

and

Douglas S. Reinhart
Counsel to Atlantic Richfield Company
150 W. Warrenville Road
Mail Code 200-1W
Naperville, IL 60563
douglas.reinhart@bp.com

and

Michael H. Elam
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606
michael.elam@btlaw.com

As to Settling Defendant DuPont:

Sathya Yalvigi
Project Director
Corporate Remediation Group
974 Centre Road
Chestnut Run Plaza 715-218
Wilmington, DE 19805
302-999-2764 (Office)
484-678-8984(Cell)
Sathya.v.Yalvigi@dupont.com

Bernard J. Reilly
DuPont Company
Legal D-7082A
1007 Market Street
Wilmington DE 19898
Phone:  302-774-5445
bernard.j.reilly@dupont.com

David L. Rieser
Much Shelist, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Phone: 312-521-2717
DRieser@muchshelist.com

## XXIV. RETENTION OF JURISDICTION

95.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XVI (Dispute Resolution).

## XXV.    APPENDICES

96.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is a map depicting the geographic boundaries of OU1 and OU2 of the Site
"Appendix B" is the Z1&3 Statement of Work
"Appendix C" is the Record of Decision
"Appendix D" is a map depicting the geographic boundaries of Zones 1, 2, and 3 of OU1 of the Site
"Appendix E" is the form of the Performance Guarantee described in Section X.

## XXVI. COMMUNITY INVOLVEMENT

97.    If requested by EPA or the State, Settling Defendants shall participate in community involvement activities pursuant to the community involvement plan to be developed by EPA. EPA will determine the appropriate role for Settling Defendants under the Plan. Settling Defendants shall also cooperate with EPA and the State in providing information regarding the Z1&3 Work to the public. As requested by EPA or the State, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings that may be held or sponsored by EPA or the State to explain activities at or relating to the Site. Costs incurred by the United States and the State under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be considered Z1&3 Future Response Costs and State Z1&3 Future Response Costs that Settling Defendants shall pay pursuant to Section XIII (Payments for Z1&3 Future Response Costs and State's Z1&3 Future Response Costs).

## XXVII.    MODIFICATION

98.    Except as provided in Paragraph 12 (Modification of Z1&3 SOW or Related Work Plans), material modifications to this Consent Decree, including the Z1&3 SOW, shall be in writing, signed by the United States and Settling Defendants, and shall be effective upon approval by the Court.  Except as provided in Paragraph 12, non-material modifications to this Consent Decree, including the Z1&3 SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendants.  All modification to the Consent Decree, other than the Z1&3 SOW, also shall be signed by the State, or a duly authorized representative of the State, as appropriate.  A modification to the Z1&3 SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Before providing its approval to any modification to the Z1&3 SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

99.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXVIII.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

100.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

101.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXIX. SIGNATORIES/SERVICE

102.    Each undersigned representative of a Settling Defendant to this Consent Decree, the Assistant Commissioner of the Office of Land Quality for IDEM, the Chief Counsel for Litigation for the Office of the Indiana Attorney General, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

103.    Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

104.    Each Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

### XXX.   FINAL JUDGMENT

105.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

106.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and Settling Defendants.  The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 26th DAY OF _October_ , 2014.

United States District Judge

55

THE UNDERSIGNED PARTY enters into this Consent Decree with Atlantic Richfield Company and E. I. du Pont de Nemours and Company in the matter of *United States and the State of Indiana v. Atlantic Richfield Co., et al.* (N.D. Ind.) relating to the USS Lead Superfund Site in East Chicago, IN, subject to public notice and comment.

## FOR THE UNITED STATES OF AMERICA

s/ Sam Hirsch
SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20530

s/ Annette M. Lang
ANNETTE M. LANG
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Phone:  202 514-4213
Fax:  202 616-6584
annette.lang@usdoj.gov

DAVID CAPP
United States Attorney
Northern District of Indiana

s/ Wayne T. Ault
WAYNE T. AULT
Assistant United States Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN  46320
Phone:  219 937-5500
Fax:  219 937-5547
wayne.ault@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree with Atlantic Richfield Company and E. I. du Pont de Nemours and Company in the matter of *United States and the State of Indiana v. Atlantic Richfield Co., et al.* (N.D. Ind.) relating to the USS Lead Superfund Site in East Chicago, IN, subject to public notice and comment.

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

s/ Richard C. Karl\*\*\*
RICHARD C. KARL
Director, Superfund Division
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, IL  60604

s/ Steven P. Kaiser\*\*\*
STEVEN P. KAISER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, IL  60604

\*\*\* Signed with permission.

THE UNDERSIGNED PARTY enters into this Consent Decree with Atlantic Richfield Company and E. I. du Pont de Nemours and Company in the matter of *United States and the State of Indiana v. Atlantic Richfield Co., et al.* (N.D. Ind.) relating to the USS Lead Superfund Site in East Chicago, IN.

## FOR THE STATE OF INDIANA

s/ Peggy Dorsey, Deputy Assistant Commissioner, for***
BRUCE H PALIN
Assistant Commissioner
Office of Land Quality
Indiana Department of Environmental Management
100 N. Senate Ave. (IGCN-1101, MC 66-30)
Indianapolis, IN  46204-2251

s/ Patricia Orloff-Erdmann***
PATRICIA ORLOFF-ERDMANN
Chief Counsel of Litigation
Office of Indiana Attorney General
302 W. Washington St. (IGCS Fifth Floor)
Indianapolis, IN  46204

*** Signed with permission.

THE UNDERSIGNED PARTY enters into this Consent Decree with Atlantic Richfield Company and E. I. du Pont de Nemours and Company in the matter of *United States and the State of Indiana v. Atlantic Richfield Co., et al.* (N.D. Ind.) relating to the USS Lead Superfund Site in East Chicago, IN.

### FOR ALTANTIC RICHFIELD COMPANY

s/ Andrew Fiedler***
ANDREW FIEDLER
President, Atlantic Richfield Company
Helios Plaza-201 Helios Way
Houston, TX  77079

Agent Authorized to Accept Service on Behalf of Atlantic Richfield Company:

Name:      Douglas S. Reinhart
Title:       Counsel to Atlantic Richfield Company
Address:  150 W. Warrenville Road
              Mail Code 200-1W
              Naperville, IL  60563

Phone:     630 420-5457
Email:      douglas.reinhart@bp.com

*** Signed with permission.

THE UNDERSIGNED PARTY enters into this Consent Decree with Atlantic Richfield Company and E. I. du Pont de Nemours and Company in the matter of *United States and the State of Indiana v. Atlantic Richfield Co., et al.* (N.D. Ind.) relating to the USS Lead Superfund Site in East Chicago, IN.

### FOR E. I. DU PONT DE NEMOURS AND COMPANY

s/ Sheryl A. Telford***
SHERYL A. TELFORD
Director-DuPont Corporate Remediation Group
E. I. du Pont de Nemours and Company
1007 Market St.
Wilmington, Delaware 19898

Agent Authorized to Accept Service on Behalf of E. I. du Pont de Nemours and Company:

Name:       E. I. du Pont de Nemours and Company
Address:    Room 8042 Du Pont Building
            1007 Market St.
            Wilmington, Delaware 19898

*** Signed with permission.