# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CAUSE NO. 2:14-CV-312-PPS-PRC |
| | ) |
| ATLANTIC RICHFIELD COMPANY, et al., | ) |
|     Defendants. | ) |

## **OPINION AND ORDER**

This matter is before the Court on an Applicants' Motion to Intervene [DE 15], filed on November 1, 2016, and on an Applicants' Request for Oral Argument on Their Motion to Intervene [DE 33], filed on January 13, 2017. Both motions were filed by Applicants Carmen Garza, Gabriela Garza, Mauro Jimenez, Sara Jimenez, Andrea Jurado, Ron Adams, We The People For East Chicago, and Calumet Lives Matter. Plaintiff United States of America filed a response to the Motion to Intervene on December 16, 2016, and Applicants filed a reply on January 13, 2017. No response to the Motion for Oral Argument has been filed. Both motions are ripe for ruling.

## **PROCEDURAL BACKGROUND**

Plaintiffs United States of America and State of Indiana initiated this cause of action on September 3, 2014, by filing a Complaint. On the same date, the United States of America filed a Notice of Lodging of Proposed Consent Decree. On October 15, 2014, the Government filed an Unopposed Motion of the United States for Entry of Consent Decree. The Court held a conference on October 28, 2014, and the Consent Decree was signed and judgment entered the same day.

On September 2, 2016, the Government filed a Status Report.

On November 1, 2016, Applicants filed the instant Motion to Intervene and, on January 13, 2017, Applicants filed the instant Request for Oral Argument.

The action is brought under Sections 106 and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9606, 9607(a), and involves the U.S. Smelter and Lead Refinery, Inc. Superfund Site located in East Chicago, Indiana. This site is divided into two Operable Units (OU1 and OU2). OU1 is divided into three zones. This litigation is about the clean-up of Zones 1 and 3 in OU1.

The individual Applicants state that they live and/or own property in the Calumet neighborhood of East Chicago. Applicants represent that We the People for East Chicago is a community organization whose members primarily live in Zones 2 and 3 of OU1 in the Superfund Site. Applicants represent that Calumet Lives Matter seeks to intervene on behalf of itself and its members, who are residents of OU1.

**ANALYSIS**

Applicants argue that they are entitled to intervene as a matter of right under both 42 U.S.C. § 9613(i) and under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Applicants argue that the Court should allow permissive intervention under Federal Rule of Civil Procedure 24(b)(2). The Government opposes the Motion to Intervene on the basis that this Court lacks jurisdiction to grant the relief that Applicants seek and that Applicants cannot satisfy the requirements for intervention under CERCLA or Rule 24. The Court addresses the jurisdictional issue first.

**A. Jurisdiction**

The Government argues that the Court lacks jurisdiction to grant Applicants' requested relief because CERCLA's provisions bar jurisdiction to hear challenges to ongoing remediation. CERCLA provides

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law

2

which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

- (1) An action under section 9607 of this title to recover response costs or damages or for contribution.
- (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
- (3) An action for reimbursement under section 9606(b)(2) of this title.
- (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
- (5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h).

Though the challenge itself is not one of the listed exceptions, the first claim for relief in the Complaint that initiated this litigation is for cost recovery under 42 U.S.C. § 9607. Thus, if Applicants are given permission to intervene, their challenges to the remedial action—though not on their own meeting one of the exceptions—would, by virtue of the original Complaint, be "in an action" covered by the exception found in 42 U.S.C. § 9613(h)(1), so the jurisdictional challenge to the Motion to Intervene fails.

## B. Intervention

Having determined the jurisdictional issue, the Court proceeds to address whether any of the standards for intervention have been met. Applicants assert that intervention is proper under CERCLA and Federal Rule of Civil Procedure 24(a)(2) and (b). The parties agree that, under either CERCLA or Rule 24(a)(2), an applicant may intervene in an action by right if (1) the application is timely, (2) the applicant has an interest in the property or transaction that is the subject of the

action, (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest, and (4) no existing party adequately represents the applicant's interest. *See Int'l Paper Co. v. City of Tomah*, No. 00-C-539-C, 2000 WL 34230089, at *2 (W.D. Wis. Nov. 30, 2000). Under CERCLA, the applicant bears the burden as to the first three elements and the government bears the burden as to the fourth. *See* 42 U.S.C. 9613(I). Under Rule 24, the applicant bears the burden as to all elements. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001). All of the elements must be satisfied for intervention by right.

Permissive intervention is discretionary with the Court and is allowed, on timely application, when an applicant's claim or defense and the main action have a question of law or fact in common. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000).

Thus, under CERCLA, intervention by right under Rule 24(a)(2), and permissive intervention under Rule 24(b), the motion to intervene must be timely. Because Applicants' Motion to Intervene is untimely, the Court denies the motion. *See NAACP v. New York*, 413 U.S. 345, 365 (1973) ("If it is untimely, intervention must be denied. Thus, the court where the action is pending must be satisfied as to timeliness.").

The Seventh Circuit Court of Appeals directs courts to evaluate four factors in considering timeliness: (1) the length of time the applicants knew or should have known of their interest in the case, (2) prejudice to the other parties caused by the delay, (3) prejudice to the applicants if the motion is denied, and (4) unusual circumstances. *Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003); *Sokaogon Chippewa Cmty*, 214 F.3d at 949. The Court will look at each of these factors in turn.

The Court first looks at the length of time that Applicants knew or should have known of their interests. The proposed clean-up plan was mailed to every resident living within two miles of the Superfund Site before a public meeting held on July 25, 2012. The mailing included a blank form for residents to provide written comments on the plan that they could mail to the Environmental Protection Agency (EPA) and information about the public meeting, at which residents could provide oral comments. After the Consent Decree was lodged with the Court and published in the Federal Register in September 2014, there was another opportunity for public comment before the Consent Decree was issued by the Court. Then, two years after the Consent Decree was issued and judgment was entered, Applicants moved to intervene.

Applicants assert that they did not realize that their interest in the case was not being protected as they wished it to be until recently. However, Applicants do not dispute that residents received notice in July 2012. Thus, Applicants learned of (or should have learned of) their interest in this matter (though not in this specific cause of action, which had not yet been filed) in July 2012. Regarding notice of the instant litigation, the proposed Consent Decree was published in the Federal Register, the EPA issued a press release that summarized key points of the Consent Decree on September 3, 2014 (the same day that the decree was lodged), and a local newspaper ran an article about the proposed Consent Decree a few days later. The Consent Decree stated that it covered Zones 1 and 3 in OU1, so Applicants had notice of the Consent Decree's scope. Accordingly, Applicants should have known about their interest in this specific cause of action no later than September 2014. Additionally, after the Court approved the Consent Decree, another mailing was made to residents and two information sessions were held in November 2014 to discuss the start of

5

sampling and clean-up activities. Applicants should have known about their interest in this case two years prior to their filing the Motion to Intervene.

Applicants argue that they only recently learned of the contamination levels on their properties. However, courts "determine timeliness from the time the potential intervenors learn that their interest *might be* impaired." *Rich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (emphasis added). Applicants were aware of the potential contamination of their property—if not the precise levels of contamination—when they received the notice of the Consent Decree as described above. This notice made Applicants aware that their interests might be impaired by this litigation. The first timeliness factor—the length of time that Applicants knew or should have known of their interests in this litigation—weighs in favor of finding the motion untimely.

The Court now turns to prejudice to the existing parties. Motions to intervene must be timely in order to "prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989). This case was closed over two years ago. To allow Applicants to intervene now to disturb that Consent Decree—especially where there are no pending motions to alter that Decree—would be highly prejudicial to the parties, who have already negotiated, settled, and obtained judgment in this case. *See City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987) ("[Applicant's] intervention at this time would render worthless all of the parties' painstaking negotiations.").

Additionally, delay to the remediation endangers public health. *Id.* at 536. Applicants state that they only wish to participate in the remediation process going forward and not to undo work already performed, but, even so, it is foreseeable that allowing Applicants to intervene would cause

6

delays in the processes going forward as the EPA continues its clean-up. This factor weighs in favor of finding the motion untimely.

Prejudice to Applicants must also be considered. Applicants had reasonable notice and the opportunity to make objections for the Court to hear and consider through the public comment period that followed the initial lodging of the Consent Decree. *See id.* at 537. Indeed, the Court is required to consider the objections before a consent decree can be issued. *Id.* As the Seventh Circuit Court of Appeals has held, "it is difficult to understand why [Applicants] should be allowed to intervene in the present case for the purpose of presenting [their] views on the consent decree to the court after [they] had already been afforded an opportunity to do so." *Id.* (finding that the applicants would suffer "little prejudice" because they had been given this opportunity). Accordingly, Applicants will suffer little prejudice if the motion is denied.

Finally, the Court considers unusual circumstances. The status report filed on September 2, 2016, indicates that the EPA is reexamining the remedy chosen for Zone 1. However, no party has formally sought to alter the Consent Decree issued in this matter. The Court finds that the chance that a change may be sought to the Consent Decree is insufficient to overcome the other factors weighing in favor of deeming the Motion to Intervene untimely.

In short, Applicants' Motion to Intervene is not timely. Applicants knew about their interest in this now-closed litigation for years before filing the motion, the existing parties would be prejudiced if Applicants were able to relitigate these settled matters, Applicants have already been given the opportunity to present their objections to the Court and will suffer little prejudice if their motion is denied, and permitting intervention could endanger public health. There is a chance that the EPA will seek to alter the Consent Decree, but there is currently no formal request to do so in

this litigation. Applicants' Motion to Intervene is denied as untimely under all three legal bases of intervention sought: CERCLA, Rule 24(a)(2), and Rule 24(b).

### C. Request for Oral Argument

Because the Court is able to resolve the Motion to Intervene on the briefing alone, Applicants' request for oral argument on the Motion to Intervene is denied.

### CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Applicants' Motion to Intervene [DE 15] and the Applicants' Request for Oral Argument on their Motion to Intervene [DE 33].

SO ORDERED this 2nd day of May, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT