August 9, 2017

david.chizewer@goldbergkohn.com
direct phone: 312.201.3938
direct fax: 312.863.7438

**VIA FEDERAL EXPRESS**
**AND ECF**

The Honorable Philip P. Simon
United States District Court
Northern District of Indiana
5400 Federal Plaza
Suite 4400
Hammond, IN 46320

Re: **United States of America and State of Indiana v. Atlantic Richfield Company, et al.**
**Civil Action No. 2:14-cv-00312-PPS-PRC**

Dear Judge Simon:

This firm represents the Applicants-Intervenors in the above-referenced case concerning the USS Lead Superfund Site in East Chicago, Indiana. Applicants filed a Motion to Intervene, which was denied by Magistrate Judge Cherry for not being timely filed. Applicants' Objection to Magistrate Judge Cherry's Opinion and Order is now fully briefed before Your Honor. Applicants would like to draw your attention to a recently-issued decision by Chief Judge Springmann in *Rolan, et al. v. Atlantic Richfield Company, et al.*, 1:16-cv-00357-TLS-SLC (N.D. Ind.), attached hereto as Exhibit A, which is relevant to the timeliness determination now before Your Honor.

The *Rolan* decision deals with the very same set of circumstances surrounding the USS Lead Superfund Site in East Chicago. In *Rolan*, Plaintiffs LeRithea Rolan and Lamottca Brooks filed a class action complaint against Defendants Atlantic Richfield Company and E.I. du Pont de Nemours and Company on behalf of residents who lived in Zone 1 of the USS Lead Superfund Site. In determining whether the applicable statute of limitations had run for Plaintiffs' state law claims, Judge Springmann found that:

> . . . The evidence that Defendant DuPont attached to its Motion all relates to the EPA's plan in 2012. At that time, the Plaintiffs were notified that there would be a clean-up in their community and that EPA was organizing it. However, the Plaintiffs were under the impression that the clean-up would not impact their homes or require them to move. Although the Plaintiffs knew as early as 2012 that the Defendants' conduct was the reason for the clean-up, they did not know or have reason to suspect that the Defendants' conduct had harmed them in any tangible way.

8937173  8/9/2017 3:02 PM        7553.001        TEL 312.201.4000  FAX 312.332.2196  WEB WWW.GOLDBERGKOHN.COM
55 EAST MONROE STREET SUITE 3300 CHICAGO ILLINOIS 60603-5792

MERITAS LAW FIRMS WORLDWIDE

The Honorable Philip P. Simon
August 9, 2017
Page 2

> Indeed, the EPA's statement that "residents . . . will no longer be exposed to soil that poses a threat to human health," and that "land use of the properties will remain unchanged" as a result of its remediation, all support this assumption of the Plaintiffs. (R. of Decision 49.)
>
> But, that all changed in the Summer of 2016, when the Plaintiffs received different messages from governmental entities. One governmental actor advised them of hazardous substances on their properties, but then subsequently advised them to try to stay indoors, while others warned them that they had to relocate immediately, and that the EPA's "work is on hold" until there is more clarity with regard to the situation. (U.S.'s Opp'n to Mot. Intervene 9.) It appears that this confusion could have been because the contamination of lead and arsenic at West Calumet was greater than previously anticipated, necessitating changes to the government's response. (*Compare* R. of Decision 48–49 (explaining that EPA's remediation plan will "reduc[e] exposure of residents to contaminated soils that pose a health risk . . . , and allow[] for the continued residential use of impacted residential properties"), *with* Compl. ¶ 17, Ex. 4 (increasing restrictions on home usage during remediation plan), *id.* ¶ 19, Ex. 5 ("Now that we know the levels of lead in the ground in West Calumet Housing Complex, we feel it is in your best interest to temporarily relocate your household to safer conditions.").) As such, the Plaintiffs only discovered how and how much the Defendants' conduct had harmed them—by incurring costs to investigate the contamination, "arrang[ing] for alternative temporary housing and relocations," and fearing future injuries from greater-than-anticipated levels of exposure—in Summer 2016, after the relevant authorities notified them. (Compl. ¶¶ 22–23.)

(Ex. A at 24–25.) Notably, Judge Springmann's Opinion and Order relies on the United States' response to the Applicants' Motion to Intervene in the matter before Your Honor. Her Honor's reasoning supports Applicants' Objection to Magistrate Judge Cherry's Opinion and Order (Dkt. No. 35), in which Applicants argue that their Motion to Intervene was timely filed after Applicants learned, in the summer of 2016, that their interests were threatened by the Consent Decree lodged in the above-captioned case.

Sincerely,

David J. Chizewer

GOLDBERG KOHN LTD.

The Honorable Philip P. Simon
August 9, 2017
Page 3


DJC:dmo
Attachment

cc:  Catherine Garypie, EPA Associate Regional Counsel (w/attach., via electronic mail & ECF)
     Annette Marie Lang, Esq. (w/attach., via electronic mail & ECF)
     Wayne T. Ault, Esq. (w/attach., via electronic mail & ECF)
     Gregory P. Gadson, Esq. (w/attach., via electronic mail & ECF)
     Michael H. Elam, Esq. (w/attach., via electronic mail & ECF)
     David L. Rieser, Esq. (w/attach., via electronic mail)